**In re ROCO CORPORATION d/b/a Standard Supply, Debtor.**

**[Appeal of Avram N. COHEN, Esq., Trustee].**

**Civ. A. No. 85–0200–S.
Bankruptcy No. 80007181.**

United States District Court,
D. Rhode Island.

Sept. 12, 1986.

Avram N. Cohen, trustee, Providence, R.I., pro se.

Winograd, Shine & Zacks, Allan M. Shine, Providence, R.I., for trustee.

David F. Haskell, Roberts, Feldstein & Tucker, Providence, R.I., for creditors.

## MEMORANDUM AND ORDER

SELYA, District Judge.

After review of the final report and accounting (Account) submitted by the trustee in this straight bankruptcy case, the United States Bankruptcy Court for the District of Rhode Island (Votolato, J.) awarded the trustee his commission. Disappointed by the size of the award, and unable to persuade the bankruptcy judge to up it, the trustee prosecuted this appeal.

Following the docketing of the appeal and the passage of some time, the case was transferred to the calendar of the undersigned district judge in June 1986. The court met with counsel on July 28, 1986 and afforded them an opportunity for oral argument, which was eschewed by all concerned.[1] The matter was taken under advisement at that time. It has been briefed to the nines.

## I.

When a district court reviews a decision of the bankruptcy court, the latter tribunal's findings of fact must be accepted unless they are clearly erroneous. Fed.R. Bankr.P. 8013 (West 1984). *See In re Kimzey*, 761 F.2d 421, 423 (7th Cir.1985). "A finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). *See Anthony v. Abbott Laboratories*, 106 F.R.D. 461, 463 (D.R.I. 1985). This standard adheres with undiminished force to inferences which the judge below has drawn from facts of record. *Id. See also Commissioner v. Duberstein*, 363 U.S. 278, 290–91, 80 S.Ct. 1190, 1199–1200, 4 L.Ed.2d 1218 (1960). It is applicable even to findings of fact predicated upon documentary evidence. *Anderson v. Bessemer City*, 470 U.S. 564, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985). But, the "clearly erroneous" test does not apply to the bankruptcy court's conclusions of law. *Pullman-Standard v. Swint*, 456 U.S. 273, 287, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982); *In re Kimzey*, 761 F.2d at 423.

These principles are fully operative upon appellate review of a lower court's fee award in a bankruptcy matter. *E.g., Southwestern Media, Inc. v. Rau*, 708 F.2d 419, 422 (9th Cir.1983).

---

1. Inasmuch as the trustee's interests at this point run directly counter to the interests of the general creditors, the bankruptcy judge, in the exercise of his sound discretion, wisely appointed special counsel to represent the interests of the creditors during the course of this appeal.

## II.

The case can be stated succinctly. The appellant, Avram N. Cohen, is a well-regarded bankruptcy lawyer and member of the bar of this court. On or about September 29, 1980, he accepted an appointment as the trustee in this chapter 7 filing. At approximately the same time, Cohen applied for permission to engage counsel for the trustee. That application was seasonably granted, and the trustee's legal work has without exception been performed by independent attorneys retained pursuant to decrees of the bankruptcy court.

As the matter wound down, Cohen prepared and submitted his final Account, as contemplated by 11 U.S.C. § 704(8). He stated therein that his receipts *qua* trustee aggregated $309,759.51 and that disbursements to the date of the Account (June 21, 1984) totalled $31,206.69. He requested, *inter alia*, that he be awarded a trustee's commission in the sum of $3,977.60 [2] pursuant to 11 U.S.C. § 326(a). The bankruptcy court demurred. By order entered November 19, 1984, Judge Votolato set $3,000 as the fee. (The stipend was strictly for services rendered *qua* trustee. All of the legal work was done by Cohen's lawyers, *see ante*, and was the subject of separate fee applications.)

The trustee, bitterly disappointed, filed a timely motion to reconsider. A hearing was held in the bankruptcy court and, in an order entered on March 15, 1985, the bankruptcy judge reconfirmed the initial award. It is from this reduction of his commission request that the trustee appeals.

**2.** An amended final account raised the asset total to $319,412.58 by reason of interest earned subsequent to June 21, 1984, increased disbursements to $32,404.69, and amended the commission request to $3,990. These revisions are entirely peripheral to the problem at hand.

**3.** The statute was amended in 1984 to provide a more generous formula for computing the maximum commission. *See* Pub.L. No. 98–353, Title III, § 430(a), 98 Stat. 369 (July 10, 1984), now codified at 11 U.S.C. § 326(a) (West Supp. 1985). The appellant has not relied upon the amended version of the Act, and the court accepts *arguendo* the proposition that the 1978 statutory formula controls. In any event, the

## III.

The parties agree that 11 U.S.C. § 326(a) (1978) governs the matter at bar.[3] The statute itself declares:

> In a case under chapter 7 or 11, the court may allow reasonable compensation under section 330 of this title of the trustee for the trustee's services, payable after the trustee renders such services, not to exceed fifteen percent on the first $1,000 or less, six percent on any amount in excess of $1,000 but not in excess of $3,000, three percent of any amount in excess of $3,000 but not in excess of $20,000, two percent on any amount in excess of $20,000 but not in excess of $50,000, and one percent on any amount in excess of $50,000, upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims.

11 U.S.C. § 326(a) (1978).

It should be noted that 11 U.S.C. § 330(a) provides in pertinent part that, with certain exceptions and subject to certain conditions not material here,

> the court may award to a trustee, ...—
> (1) reasonable compensation for actual, necessary services rendered by such trustee, ... based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a [bankruptcy] case ...[4]

In this case, Cohen performed the chores required of a chapter 7 trustee, *see* 11

underlying questions presented by this appeal— whether or not the maximum commission prescribed by § 326(a) should be treated as the minimum or standard commission, and whether the judge had discretion to fix Cohen's fee at $3,000—cross-hatch both the earlier and later versions of the statute in precisely the same way. In a very real sense, then, it makes no difference for purposes of this proceeding whether one looks to the statute's earlier or later incarnations.

**4.** In addition, 11 U.S.C. § 330(b) calls for an incremental payment of $20. to the trustee in a chapter 7 case.

U.S.C. § 704, in a workmanlike manner. He was plainly entitled to a commission for his services. The trustee applied to be paid the maximum allowed under 11 U.S.C. § 326(a) (1978), quoted *ante*.[5] This prayer having been denied, he now offers a double-barreled argument. Cohen asseverates, first, that the bankruptcy judge misconstrued the force and effect of § 326(a); and second, that the judge abused his discretion in fixing the trustee's commission. This court will consider these thrusts seriatim.

A. The trustee contends that 11 U.S.C. § 326(a) is not solely a limitation on the upward spiral of trustee's fees. Rather, in Cohen's view, the statute comprises a minimum fee—or at least a standard fee—which should routinely be awarded in the absence of (i) churning or other self-serving inflation of the assets on the trustee's part, (ii) incompetence or sub-par performance by the trustee, or (iii) an utter (or near-complete) lack of funds in the bankrupt estate. And, the appellant asserts, since none of these offsetting conditions obtained in the case at bar, his fee should have been set at (or at least near) the statutory maximum.

■ This asseveration, although passionately espoused and vigorously made, is fundamentally flawed. First, the explicit language of § 326(a) militates against the appellant's view; there is nothing in the context of the Act to suggest that the precatory "may" was an accidental slip of the collective congressional tongue or that the phrase "not to exceed" should be given other than its plain and usual meaning. *Cf. Quiros v. Colon*, 800 F.2d 1, 2–3 (1st Cir.1986) ("The statutory language [of 42 U.S.C. § 1988]—'the court, in its discretion, *may* allow' fees to prevailing parties—is permissive [and therefore] invests the district court with a reasonable measure of discretion to withold [sic] fees in cases where there are good reasons for doing so.") Second, if the fee structure limned by § 326(a) is seen as a grant to trustees rather than as a mere ceiling on fees, there would have been little need for Congress to have provided separate standards in 11 U.S.C. § 330(a) for calculating the amount of such stipends.

The sockdolager is simply this: the legislative history of the Bankruptcy Act of 1978 shows beyond cavil that the Congress was unhappy that maximum limits of compensation in bankruptcy cases had tended, under prior law, to become minima, and desired to put an end to this practice. As the House noted in its report on proposed § 326 of what would become the 1978 Act:

This section is derived in part from section 48c of [prior law].... This section simply fixes the maximum compensation of a trustee. Proposed 11 U.S.C. 330 authorizes and fixes the standard of compensation. *Under section 48c ... the maximum limits have tended to become minimums in many cases. This section is not intended to be so interpreted. The limits in this section, together with the limitations found in section 330, are to be applied as outer limits, and not as grants or entitlements to the maximum fees specified.*

H.R.Rep. No. 595, 95th Cong., 1st Sess. 327, *reprinted in* 1978 U.S. Code Cong. & Ad. News 5963, 6283 (emphasis supplied). *See also* S.Rep. No. 989, 95th Cong., 2d Sess. 37, *reprinted in* 1978 U.S. Code Cong. & Ad. News 5787, 5823 (same).

The purport of this unequivocal legislative history is as plain as day. 11 U.S.C. § 326(a) (1978) capped the fees which could be awarded to a trustee for his services in such capacity, but created no entitlement to a commission in that amount. There is

5. Though Cohen was apparently a fine trustee, mathematics may not have been his strong suit. His various computations of the § 326(a) ceiling as applied to this case are internally inconsistent and create a miasma of doubt as to the actual numerics. The court need not waste unnecessary time in dispelling this uncertainty: the trustee's amended application sought a commission of $3990; he proffered this figure to the bankruptcy judge as representing Cohen's calculation of his optimal entitlement under the statute; and, the requested award is at least within the statutory ambit. The trustee is, under these circumstances, bound by his proffer. This court treats $3990 as the maximum commission award for which the trustee was eligible.

nothing in the statute, in its legislative history, or in the relevant caselaw for that matter, which suggests an opposite conclusion. The statutory scheme distinguishes between eligibility and entitlement. Cohen's argument, which attempts to blur this distinction by urging that a trustee, in the absence of misconduct, bungling, or other extraordinary circumstance, is invariably *entitled* to the maximum commission for which he is *eligible*, can best be written off as wishful thinking on his part. The law runs exactly to the contrary. *See, e.g., In re Garland Corp.*, 8 B.R. 826, 832–34 (Bankr.D.Mass.1981) (awarding trustee who had "done an extremely commendable job, probably a superb job," *id.* at 832, approximately 50% of the maximum statutory commission). As the *Garland* court perspicaciously observed, "the maximum [fee under § 326(a)] really has no correlation with fair value for services." *Id.* at 833.

B. The second line of attack which the trustee plots challenges the reasonableness of the bankruptcy judge's determination of the amount of the commission award. As set out above, *see ante* Part I, the standard of review in respect to such a finding exhibits considerable deference to the judgment of the lower court. And, the discretion normally possessed by a trial court in assessing reasonable compensation for services rendered in judicial proceedings is equally wide in the environs demarcated by the bankruptcy laws. *E.g., In re THC Financial Corp.*, 659 F.2d 951, 954 (9th Cir. 1981), *cert. denied*, 456 U.S. 977, 102 S.Ct. 2244, 72 L.Ed.2d 852 (1982); *In re Botelho*, 8 B.R. 305, 306 (Bankr. 1st Cir.1981). Notwithstanding the foreboding look of this inhospitable legal landscape, the appellant protests what he perceives as the niggardliness displayed by the bankruptcy judge. This remonstrance rests on two principal grounds: first, the quantity and quality of the trustee's services, as seen by Cohen in the mirror of his mind; and second, Judge Votolato's consideration of what Cohen regards as criteria improper for inclusion in the fee-setting calculus. Neither of these forays carry the day.

The quality of Cohen's work is not at issue; the bankruptcy judge did not suggest that the trustee's labors were other than competently performed. In regard to the quantity of the services, however, that is, the amount of time and effort involved, Cohen has offered up only the vaguest of generalities. In the final Account, he described his services in the most cursory of terms, described the financial condition of the bankrupt estate with particularity, and prayed for a commission of $3977.60 (later amended to $3990, *see ante* n. 2). There was barely any allusion to his expenditure of time. After Judge Votolato had fixed the fee at $3000, the appellant moved for reconsideration. That motion recounted the nature and extent of the trustee's services and involvement in greater detail, but still did not set out the actual time and hours with any helpful detail. At the ensuing hearing before the bankruptcy judge, no time sheets, summaries, or kindred compilations were submitted.

11 U.S.C. § 330(a) speaks of "reasonable" compensation, and seeks to measure it based on a variety of factors. "Time" is one of those factors—a critically important one at that. There is simply no way accurately to measure the amount of time reasonably, necessarily, and productively expended in the absence of a proffer of detailed contemporaneous time records by the applicant. It is well settled in this circuit that the onus for shortcomings in that regard must be borne by him who seeks to receive the emolument. *E.g., Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 952 (1st Cir.1984) ("[T]he absence of detailed contemporaneous time records, except in extraordinary circumstances, will call for a substantial reduction in any [fee] award"). And, although the trustee's Account and his fee request was filed before *Grendel's Den* was decided, the handwriting was on the wall in this circuit well beforehand. *E.g., Souza v. Southworth*, 564 F.2d 609, 612 (1st Cir.1977) (failure adequately to document time "might merit disallowal, or at least drastic reduction, of a fee award").

To be sure, *Grendel's Den* and *Souza* are civil rights cases involving counsel fee awards under 42 U.S.C. § 1988. Yet, the same architectural principles which inform the construction of "lodestars" under that statute are easily transferable to the 11 U.S.C. § 330(a) blueprint. *See First Colonial Corp. of America*, 544 F.2d 1291, 1298–99 (5th Cir.) (adopting 42 U.S.C. § 1988 standard, with suitable modifications, for use in bankruptcy matters), *cert. denied*, 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977); *In re Casco Bay Lines, Inc.*, 25 B.R. 747, 753–56 (Bankr. 1st Cir. 1982) (under 11 U.S.C. § 330, bankruptcy judge first should determine lodestar as in civil rights cases, and then make special adjustments required by bankruptcy milieu). *Cf. Segal v. Gilbert Color Systems, Inc.*, 746 F.2d 78, 85–86 & nn. 8, 9 (1st Cir.1984) (where federal statutes do not expressly dictate an alternative method of calculating fees, lodestar approach favored).[6] Indeed, even before 11 U.S.C. § 330 was enacted in substantially its present form, the time element was thought to be "of major importance" in bankruptcy cases where fees were sought by officers of the court. *Official Creditors' Committee of Fox Markets, Inc. v. Ely*, 337 F.2d 461, 465 (9th Cir.1964), *cert. denied*, 380 U.S. 978, 85 S.Ct. 1342, 14 L.Ed.2d 272 (1965).

It matters little that Cohen's application is for a trustee's commission as opposed to an award of counsel fees. In either event, § 330(a) by its express language applies, and time reasonably and productively spent becomes a key ingredient of the fee-setting recipe. Although the precise contours of the lodestar equation may be fashioned somewhat differently where professional fees other than those of counsel are involved and while the rate of remuneration may vary, *see post* n. 7, the need for an adequate accounting of the petitioner's temporal involvement cannot be gainsaid.

■ Without the time-and-hours data which the trustee, as an applicant for fees, was duty bound to furnish, the bankruptcy judge had little choice but to treat Cohen's petition with great conservatism. As *Souza* intimated, 564 F.2d at 612, "drastic reduction" became the order of the day. And, the absence of such data is likewise fatal to Cohen's present plea; without it, the reviewing court cannot say that the bankruptcy judge was clearly wrong in his assessment and balancing of the elements which ought to enter into the § 330(a) equation.[7]

Although perhaps supererogatory in light of the foregoing, some brief reference may also be in order as to the appellant's second (related) complaint. He criticizes the bankruptcy judge for giving weight, in fixing the commission, to (i) the size of the bankrupt estate vis-a-vis the total claims of creditors, and (ii) the requests for compensation filed by other professionals, and the fate of those fee requests.

■ To be sure, the enactment of 11 U.S.C. § 330 as a part of the 1978 Act jettisoned the concepts of conservation of the estate and economy of administration which had long been bellwethers of fee-setting in the bankruptcy arena; in their stead, the new law adopted a marketplace approach. *In re Casco Bay Lines, Inc.*, 25 B.R. at 753–54. *See also* H.R.Rep. No. 595, *supra, reprinted in* 1978 U.S. Code Cong. & Ad. News 5963, 6286. But, the

---

6. It appears significant that the *Segal* panel, in its exposition of the point, cited as an illustration *First Colonial Corp., supra*, and did so with apparent approval. *Segal*, 746 F.2d at 86 n. 9.

7. There is an analogous problem, too, with deciphering the applicable rate to be applied to whatever hours the trustee may have devoted to his duties. Cohen assumes throughout that the appropriate rate for his compensation *qua* trustee should be measured by the rate which his services as an attorney would command. But,

that assumption is unfounded. A trustee need not be a lawyer, and the reasonable value of the efforts ought to be surveyed based on *what* is involved, and upon the amount of time productively spent, not necessarily upon *who* is involved. *Cf. Gabriele v. Southworth*, 712 F.2d 1505, 1506–07 (1st Cir.1983) (rate applicable to different segments of lawyer's time in 42 U.S.C. § 1988 fee application should vary depending upon nature and rigorousness of tasks involved).

elements set out in 11 U.S.C. § 330(a) do not purport to be all-inclusive. *In re Garland Corp.*, 8 B.R. at 831. Other guideposts can—and should—be considered where pertinent and appropriate. Within § 330(a) itself, the value of the services rendered and the reasonableness of the compensation both seem to call into play an holistic concept of fee-setting.

 Although economy of administration and conservation of the estate are no longer weighty factors, a court ordained to determine the "value" of a trustee's services cannot blind itself to the pertinent economic realities. In this instance, Judge Votolato was at liberty to consider that the aggregate fees allowed exceeded $120,000, a figure which represented upwards of 40% of the funds available to the estate after payment of administration expenses other than fees but before any dividends to the general creditors.[8] Such a proliferation of professional fees could well shed some light on the usefulness and worth of Cohen's services. The bankruptcy judge was likewise within the broad sweep of his discretion in considering that the creditors would be receiving dividends of roughly fifty cents on the dollar. Again, this court cannot say that such data was unrelated to the value of the trustee's efforts or to the results obtained.

The *nisi prius* court, in its role as the factfinder of first resort, has wide discretion in the discernment of the relevancy *vel non* of evidentiary items. *United States v. Tierney*, 760 F.2d 382, 387 (1st Cir.1985). Judge Votolato properly exercised this discretion in looking to these additional elements. Realistically viewed, this information had some arguable bearing on the need for and the value of the trustee's services. This was all the more true where, as here, the fee applicant left the bankruptcy judge without credible proof of the hours expended. Cohen, by declining to make even a feeble effort to document his time, has cut himself off from any

legitimate complaint. Courts like the Diety, most often help those who help themselves.

The appellant has wholly failed to carry his burden of persuading this court that the bankruptcy judge abused his discretion in setting the amount of the trustee's compensation to $3000.

### IV.

For these reasons, the appeal is denied and dismissed; the bankruptcy court's March 15, 1985 order is affirmed; and the papers in the case shall be returned to the bankruptcy court with this court's order endorsed thereon.

*It is so ordered.*

---

8. The amended final Account shows a balance available of $287,007.89. Compensation requests—apart from that of the trustee—totalled $166,893. Based on these applications, Judge Votolato awarded fees of $121,513. General creditor claims added up to $308,356.39.