### In re SAMSON INDUSTRIES, INC., Debtor.

### Bankruptcy No. 85–03616S.

United States Bankruptcy Court, E.D. Pennsylvania.

Dec. 20, 1989.

Supplemental Opinion Jan. 9, 1990.

---

Howard S. Klein, Philadelphia, Pa., Donald McCurdy, Media, Pa., for debtor.

Max Schwartz, Philadelphia, Pa., trustee.

James J. O'Connell, Asst. U.S. Trustee, Philadelphia, Pa.

Edward J. DiDonato, Philadelphia, Pa., for trustee.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

At issue, once again, in light of certain statements by the district court in *In Greenley Energy Holdings of Pennsylvania, Inc.*, 102 B.R. 400, 405–06 (E.D.Pa. 1989) (hereinafter *"Greenley II"*), disapproving our statements on the same subject in a decision reported as *In re Greenley Energy Holdings of Pennsylvania, Inc.*, 94 B.R. 854, 854–55, 857–58 (Bankr.E. D.Pa.1989) (hereinafter *"Greenley I"*), is the degree of specificity of recitation of services rendered which must accompany an Application of a trustee for compensation pursuant to 11 U.S.C. §§ 326(a), 330(a). We conclude that, while the trustee's adherence to the procedural structures of *In re Meade Land & Development Co., Inc.*, 527 F.2d 280, 285 (3d Cir.1975), is not a necessary condition for receipt of commissions in excess of $500, it is always preferable; and it is necessary for a trustee to submit, at a minimum, an estimate of hours spent at particular tasks and a basis for an hourly rate claimed. We are therefore obliged to insist that the Trustee in the instant case provide us with more detail as to the services that he has rendered before we will allow him any commission in excess of $500.

This voluntary Chapter 7 business bankruptcy case was filed on August 30, 1985. The Trustee, MAX SCHWARTZ (hereinafter "the Trustee"), accepted his appointment, well over four years ago, on September 10, 1985. The Trustee is not an attorney nor has he received any appointments as a trustee in any cases in this court for over three years. We have no knowledge of his professional qualifications or particular competency to serve as a trustee. It appears that his counsel, appointed on October 1, 1985, and awarded over $56,000 in compensation for attorneys' fees and reimbursement of costs in this case, has performed most, if not all, of the services necessary in collecting the assets of the

estate, which the Trustee's Final Account indicates total $379,391.86. Almost all of these assets were collected in receipt of the sale proceeds of a single parcel of realty formerly owed by the Debtor ($284,258.99); rentals collected on another parcel of realty ($44,000); and interest earned on these sums over the years of administration of this case ($41,464.36).

The docket of this case reflects 181 entries, making it a case of moderate size. Most of the legal activity, the filing of objections to proofs of claim and institution of a few preference actions, was not begun until October, 1987, and completed by October 1, 1988. Due to the apparent delays in administration of this case to conclusion, the United States Trustee filed a motion to remove the Trustee, for cause, pursuant to 11 U.S.C. § 324(a), on September 7, 1989. A hearing of October 11, 1989, resulted in an Order of that date requiring a Final Audit Hearing to be conducted on November 21, 1989; a proposed Order of Distribution to be filed by the Trustee or his counsel on or before January 1, 1990; and the production of a zero bank balance and copies of cancelled checks to be supplied by the Trustee or his counsel on or before March 1, 1990.

The Final Audit Hearing was conducted on November 21, 1989. All papers filed, including the Trustee's Final Account and final compensation requests for all professionals except the Trustee, were in order and orders have been entered. In his Application, the Trustee remitted only a schedule reciting his receipts and a computation of the maximum allowable commission under the formula set forth in 11 U.S.C. § 326(a), which came to a figure of $11,561.76. He apparently felt that this submission justified his request for this sum. *But see Greenley I*, 94 B.R. at 856–58.

We requested the Trustee, who appeared only by counsel, to submit a more detailed Application if compensation in excess of $500 were requested. In apparent response thereto, a document entitled "Record of Services Performed by Trustee" was filed on December 12, 1989. This

consisted of a list of four generalized tasks, *i.e.*, collecting property of the estate; investigating the Debtor's financial affairs; performing all services required by the Bankruptcy Code; and "specific services." The latter includes 28 services described with no degree of particularity nor date, *e.g.*, two entries entitled "Participate in collection of various receivables" (only one receivable in addition to the rent, which was apparently paid regularly in due course, is listed on the Trustee's Final Account); and a total estimate of 250 hours of time spent (this works out to an hourly rate of about $46 per hour). This is apparently all that the Trustee feels obliged to provide to us in order that we "plug in" his maximum statutory fee.

■ Contrary to the belief of the Trustee, as expressed by his counsel, we do not believe that *Greenley II* provides that this remittance is sufficient to justify our allowing him compensation in excess of $500 in this case. In *Greenley*, the principal issue was on what basis the commissions of the Trustee should be computed. We never questioned that the *Greenley* trustee had performed sufficient services to merit the commission that we were prepared to allow, even though he had not submitted time records in compliance with the procedural standards of *Meade Land*. *Greenley I*, 94 B.R. at 856, 858, 861.

Also, *Greenley* involved a trustee who not only ran the Debtor's business, but the unusual circumstance of a Trustee who greatly enhanced its operations during his tenure. *Greenley II*, 102 B.R. at 401–02; and *Greenley I*, 94 B.R. at 855. The district court properly recognized that the trustee had accomplished a "small miracle" in turning the *Greenley* debtor, an owner of coal-mining wastes which constituted environmental hazards and presenting a corporate environment which was fraught with internal stockholders' disputes, into a profitable enterprise. 102 B.R. at 401.

In the context of these facts, the district court held as follows, 102 B.R. at 405, regarding the requirement that the trustee in that case comply with *Meade Land:*

a trustee entrusted with the difficult task of running a failing business may have many on-going functions to perform. Further, the trustee may be involved with more than one trusteeship along with other business engagements. To require the trustee to keep detailed time records traditionally required to be kept by attorneys seeking fees would be unduly burdensome. Such a requirement while desirable in the abstract is not without real world costs. Not only do detailed time reports consume additional trustee time, but it might also force the trustee to deal with trusteeship matters on a more rigid schedule, that is, the trustee might be forced to block his time and only handle trustee matters at certain times. This could have detrimental effects on a debtor's business since many practical business problems which arise require prompt resolutions, and cannot be forced to arise only at specialized times.

The district court clearly did not indicate that the time spent and the duties performed by the trustee in furtherance of duties was irrelevant to the determination of his proper commissions. Rather, that court reiterated that the time spent, the intricacies of the problems presented, and the opposition encountered in trying to resolve those problems were all pertinent inquiries in determining the appropriate commission to be allowed to a trustee. 102 B.R. at 406.

The district court cited two cases in support of its holding that, in the *Greenley* factual context, compliance with the formalities of *Meade Land* was unnecessary, *In re Missionary Baptist Foundation of America,* 77 B.R. 552, 554 (Bankr.N.D.Tex. 1987); and *In re Doctors, Inc.,* 4 B.R. 346, 347–48 (Bankr.E.D.Pa.1980). In *Missionary Baptist,* the court emphasizes, as did the district court in *Greenley II,* that the trustee "was not engaged in a liquidation, but rather a reorganization and continuing operation of a business." 77 B.R. at 554. Furthermore, at a hearing in that case (as in *Greenley II* ), the trustee had "estimated his time as closely as possible" in support of his application. In *Doctors, supra,* the

trustee was himself an attorney for 51 years, whose competence was apparently well-known to the court, and, at a hearing, he "proceeded to testify in detail regarding his services." 4 B.R. at 348.[1]

In the instant case, the Trustee's expertise is not known to us. There was no duty on his part to operate a business, as this case began as a Chapter 7 liquidation. No "small miracles" were expected, and none were performed. All indications are that the Trustee here performed simply ministerial functions under the direction of his counsel. *Compare In re Candy Lane Corp.*, 64 B.R. 459, 460–61 (Bankr.S.D.N.Y. 1986). Therefore, even under the standards enunciated in *Greenley II* and the cases cited by it, the Trustee has provided us with totally insufficient information to support the compensation which he has requested.

In *Greenley I*, we did not undertake any significant discussion of the cases addressing the format of trustees' applications for compensation. We do so here, and conclude that courts are most reluctant to excuse a trustee from the requirement of filing an application in at least basic conformity with *Meade Land* as a precondition for recovery of compensation in all cases except those where the trustee, as in *Greenley*, was engaged in "hands-on" operation of a business.

The basic considerations which underlie an application of a trustee seeking compensation for services were set down by the Supreme Court thusly in *Callaghan v. Reconstruction Finance Corp.*, 297 U.S. 464, 468, 56 S.Ct. 519, 521, 80 L.Ed. 804 (1936):

> Trustees in bankruptcy are public officials and officers of a court, and the officers of a court, like public officials generally, "must show a clear warrant of law before compensation will be owing to them for the performance of their public duties." *Realty Associates Securities Corp. v. O'Connor*, 295 U.S. 295, 299 [55 S.Ct. 663, 665, 79 L.Ed. 1446 (1935)].

Although, as the district court points out in *Greenley II*, 102 B.R. at 405, *Meade Land* involved only the issue of compensation of counsel for the trustee, we note that the Court of Appeals, in *Meade Land*, cited with approval to earlier decisions of that court which *did* involve the compensation of trustees or their earlier counterparts under the Bankruptcy Act, *i.e.*, receivers, *In re Imperial "400" National, Inc.*, 432 F.2d 232, 237 (3d Cir.1970); and *United States v. Larchwood Gardens, Inc.*, 404 F.2d 1108, 1113–16 (3d Cir.1968). In both of these earlier cases, the court emphasized the necessity that a *trustee* (or a receiver) must establish the time expanded and the nature of the services performed as a precondition to receipt of compensation. In *Larchwood Gardens*, the court, observing that many of the services performed by the receivers in that case were ministerial, reduced their rate of compensation to $20 per hour. *Id.* at 1114–16. *See also In re Urban America Development Co.*, 564 F.2d 808, 809–10 (8th Cir.1977) (requested hourly rate of trustee of $43.77 per hour reduced to $20 per hour); *In re Beverly Crest Convalescent Hospital, Inc.*, 548 F.2d 817, 820–21 (9th Cir.1977) (court's "conscience shocked" over award of an hourly rate of $85 per hour to the trustee; rate reduced to $50 per hour); and *Massachusetts Mutual Life Insurance Co. v. Brock*, 405 F.2d 429, 434–35 (5th Cir.) *cert. denied*, 395 U.S. 906, 89 S.Ct. 1748, 23 L.Ed.2d 220 (1969) (rate of compensation of trustee reduced from $45 per hour to $25 per hour).

Of course, in reviewing these cases, we must make allowances for inflation and repudiation of the "spirit of economy" dictated by the Bankruptcy Act which pervaded them. However, the need for a trustee to "show a clear warrant" to justify the compensation requested, *see Callaghan, supra*, 297 U.S. at 468, 56 S.Ct. at 521,

---

1. Our experience dictates that time constraints do not justify supplementation of written fee application with oral hearings. *See In re Metro Transportation, Co.*, 107 B.R. 50, 54 (E.D.Pa. 1989) ("applicants cannot rely on [a] fee petition hearing to 'explain' the fee petition"). Therefore, it is incumbent upon all applicants for compensation in our court to supply complete *written* applications for compensation.

continues to pervade most contemporary cases decided under the Bankruptcy Code.

In *Continental Illinois National Bank & Trust Co. v. Wooten*, 90 B.R. 226, 230 (W.D.La.1988), the court states as follows:

It is well established under the Bankruptcy Code that those seeking compensation for professional services rendered on behalf of a debtor's estate bear the burden of proof in establishing the reasonable value of their services. *In re NRG Resources, Inc.*, 64 B.R. 643 (W.D. La.1986). In *Riddell* [*v. National Democratic Party*, 545 F.Supp. 252 (S.D. Miss.1982) ], the court held that the applicant's burden of proving entitlement to compensation is satisfied by the submission of an application supported by sufficiently detailed documentation.

... It has been held that without the time-and-hours data which the trustee, as an applicant for fees, was duty bound to furnish, the court may disallow, or at least drastically reduce, a fee award. *In re Roco Corp.*, 64 B.R. 499 (D.R.I.1986); *Souza v. Southworth*, 564 F.2d 609 (1st Cir.1977).

Similarly, the court in *In re Photon, Inc.*, 26 B.R. 693, 699 (Bankr.D.Mass.1982), stated as follows:

The instant fee application does not contain a detailed outline of the amount of time spent or how that time was spent. There is simply a general description of the services performed followed by a statement that the value of the total services rendered is in excess of $210,000.00. This will not suffice. A fee applicant must submit a detailed record that will enable the court to calculate the value of the services for which compensation is sought. The court shall allow this applicant an additional 30 days to submit the time sheets and other documents that are necessary for an intelligent determination of his fee.

In *Southwestern Media, Inc. v. Rau*, 708 F.2d 419, 426 (9th Cir.1983), the court mandated that the trustee, like his attorney, "should keep accurate records of the time spent on behalf of the estate." Similarly, the court, in *In re Cemetery Development Corp.*, 57 B.R. 54, 56 (Bankr. N.D.La.1985), directed the trustee "to continue to keep and to file time records in support of his application(s) for compensation." Other courts have concluded that a trustee who fails to provide information to support a *Meade Land*-type lodestar will be compelled to accept reduced compensation, measured by the court's conservative estimate of the time and value of services actually expended. *See In re Roco Corp.*, 64 B.R. 499, 504–05 (D.R.I.1986) (compensation reduced from $3,990 requested to $3,000); and *In re Rosen*, 95 B.R. 11, 12–13 (Bankr.N.D.N.Y.1988) (although maximum compensation would have been $26,412.59, court fixed award at $5,000, rejecting trustee's claim that detailed time records were not required). *Cf. In re Paolino*, 80 B.R. 341, 345–47 (Bankr.E.D.Pa.1987) (FOX, J.) (trustee's compensation measured on lodestar basis).[2]

It is therefore clear to us that, in order to obtain more than the $500 sum which can be allowed on an application for compensation without notice and a hearing pursuant to Bankruptcy Rule 2002(a)(7), *see Greenley I*, 94 B.R. at 858, a trustee must submit a detailed fee application. Preferably, the application should contain the data required in *Meade Land, i.e.*, every service for which compensation is requested should be identified individually by date and precise time expended on each. Exceptions are permissible if the trustee, like the trustee in *Greenley*, was compelled to act

---

2. We do not consider a trustee's commissions in the same light as a broker's commission or an auctioneer's commission, which are generally compensated on a percentage basis in all contexts outside of bankruptcy, and need not be accompanied by a *Meade Land*-type itemization of services performed. *Compare In re TM Carlton House Partners, Ltd.*, 108 B.R. 512, 521 n. 6

(Bankr.E.D.Pa. Dec. 15, 1989); and *In re Schwemmer Hardware Co.*, 103 B.R. 635, 638–39 (Bankr.E.D.Pa.1989). A bankruptcy trustee is a creature of the bankruptcy process and a fiduciary of the highest order to the court. Therefore, a trustee's performance of duties and compensation is demanding of the highest degree of scrutiny by the court.

as a hands-on, day-to-day manager of a debtor's business. Also acceptable, in the event that the trustee performed services prior to the announcement of our decision in *Greenley I* on January 12, 1989, are reconstructed time records which provide accurate estimates of time expended. In addition, the trustee must also place an hourly rate on his services and provide some justification for the hourly rate requested.

The instant case has, from its inception, been a Chapter 7 case. Hence, from the outset, it has presented a liquidation, not reorganization and continued operation of a business. There are indicia that the Debtor's assets practically fell into the Trustee's lap, and that whatever skilled services were necessary to collect additional assets, these were done by counsel, with little input from the Trustee. *Compare Candy Lane, supra,* 64 B.R. at 460–61. The Trustee's services, then, appear to have been mostly ministerial. Such services demand, even in the current marketplace, little more in the way of hourly compensation than $25 per hour, which, in a full-work year, translates into an annual salary of about $50,000.

We should also observe that we are less than totally pleased with the deliberate administration of this case by the Trustee. The United States Trustee felt obliged, with justification, to file a motion to remove the Trustee, which motion, if successful, may have resulted in a loss to the Trustee of all or some of the commissions otherwise available to him *and* his removal from all other cases in which he is serving as Trustee as well, *see* 11 U.S.C. § 324(b), triggering a similar impact on his potential compensation in those other cases. We recognize that the delays in administration can be attributed in large part to the Trustee's counsel, to whom we believe that the Trustee has delegated much of his duties. It is, however, no excuse for the Trustee to blame solely his counsel, over whom he maintains the power of dismissal, for any derelictions. He and his counsel are both answerable to the court. In light of the foregoing, we conclude that the Trustee's diligence (or lack thereof) in administering

this case certainly does not support the conclusion that a premium value should be placed upon his services.

Because of the previous delays in this case and the fact that the Trustee's unacceptable response to the specific request of this court for more detailed time records justifying his own compensation is solely responsible for delay of the administration of this case at present, we are obliged to clamp time deadlines on the Trustee's future performance of his duties. He must submit any amended Application for compensation on or before January 5, 1990, or his compensation will be capped at $500. We shall provide to him a one month dispensation beyond the dates included in our October 11, 1989, Order, to submit a proposed Order of Distribution and the bank statement necessary to close this case, made necessary by the delay in completion of this Application process. However, if the Trustee fails to adhere to these revised deadlines, we shall remove him as Trustee and impose a monetary penalty upon him and his counsel.

An Order consistent with this Opinion will be entered.

### ORDER

AND NOW, this 20th day of December, 1989, upon consideration of the Motion of James J. O'Connell, Esquire, Assistant United States Trustee, to Remove Max Schwartz as Chapter 7 Trustee of the above identified estate for cause under 11 U.S.C. § 324(a), and review of the submissions of the said Max Schwartz in support of his Application for Compensation, considered at the Final Audit Hearing of November 21, 1989, in this case, it is ORDERED as follows:

1. The Trustee shall submit an Amended Application for Compensation in substantial (or reconstructed) conformity with *In re Meade Land and Development Co., Inc.,* 527 F.2d 280, 285 (3d Cir.1975), filing same with the Clerk of this court and serving copies of same on the court in chambers and upon the Assistant United States Trustee on or before January 5, 1990, or he

shall be barred from receiving any compensation in excess of $500 for his services.

2. The Trustee or counsel for the Trustee shall submit an Order for Distribution on or before February 1, 1990, and shall thereafter file the cancelled checks and zero bank statement; or an affidavit, pertaining to disbursements made pursuant to the Order of Final Distribution, setting forth that there is a zero balance in the account and that the cancelled checks are no longer available on or before April 1, 1990.

3. If the Trustee or his counsel fail to strictly comply with paragraph two of this Order, the Trustee will be removed pursuant to 11 U.S.C. § 324(a); and monetary sanctions will be imposed against the Trustee and his counsel.

## SUPPLEMENT TO OPINION OF DECEMBER 20, 1989

On January 5, 1990, the final date established in our Order of December 20, 1989, for allowing same to be filed or, as a consequence, he would be barred from receiving commissions of greater than $500, the Trustee filed an Amended Application for Allowance of Compensation. Undaunted by our criticism of the performance of his services in the Opinion accompanying that Order, see 547, 549, 550–51, the Trustee nevertheless requests the full compensation allowable to him under 11 U.S.C. § 326(a), i.e., $11,561.76, for his services.

Regarding his hourly rate of compensation, which we suggested should be established at $25 per hour, slip op. at 12, the Trustee advises us that he has been retired for 15 years from a position as Special Assistant to the Regional Director of the Postal Service, which netted him a salary of $30,000 annually. He claims to bring experience to bear from having served as a Trustee in approximately 1,150 other cases, none of which nor his personal accomplishments therein are noted. The hourly rate requested is $60 per hour.

Accurately sensing that our displeasure with the delay in administration of this case will adversely impact upon the hourly rate which we will allow him, the Trustee attempts to justify the delay. He attributes it solely to the fact that, when he sold what he thought was the entire parcel of the Debtor's realty in Media, Pennsylvania, on August 20, 1986, it "was discovered that certain property ... belonging to the Debtor had not been conveyed." After two years of attempting to resolve this matter with the purchaser, the Trustee, per an auctioneer, sold the remaining parcel of land on May 23, 1989, for $10,750.

We cannot accept this rather bizarre "problem" as a justification for the delay in administration of the case. Had this "problem" been brought to our attention via an appropriate motion or proceeding in 1986, as it should have been, we suspect that it would have been resolved at least two years prior to May, 1989.

We also cannot accept the Trustee's suggestion that his credentials, which we find unspectacular, justify a higher rate of compensation than $25 per hour. We observed, in our Opinion, at 551, that the $25 hourly rate factors out to an annual salary of about $50,000, far in excess of what the Trustee, in his long-departed active employment life, ever earned.

Given the Trustee's poor performance of his duties here, we are, in our view, being charitable in setting his hourly rate at $25 per hour.

The Trustee itemizes his time spent as follows:

1. Receipt of (by our count) 247 pieces of mail, each of which he allows himself 15 minutes to review, which amounts to around 62 hours.

2. 23 hours of conferences with his counsel.

3. 120 hours of other time, 80 hours of which is allotted to 10 trips to Media (the situs of the Debtor's realty), participation in negotiations (15 hours), and attendance at "various meetings" (10 hours) and reviewing "various pleadings" (15 hours). We note that hours previously estimated at approximately 250 hours, see previous Opinion, at 548, have now shrunken to 205

hours. We are therefore leery of the Trustee's approximations.

Reviewing same, even with an eye of liberality, because we recognize that the Trustee, prior to our first decision in *In re Greenley Energy Holdings of Pennsylvania, Inc.*, 94 B.R. 854 (Bankr.E.D.Pa.1989), would not have been likely to have kept records, we compute the compensable time expended as no more than the following:

| | |
|---|---|
| Reviewing correspondence (it should not take 15 minutes to review every letter). | 40 hrs. |
| Conferences with counsel (these were necessary because of the Trustee's apparent inability to perform many services without aid of counsel, but were, for that reason excessive). | 20 hrs. |
| Other services (we frankly doubt seriously the purpose served by all the trips to Media; except for conference with his counsel, the Trustee appears to have failed to utilize the telephone). | 80 hrs. |
| TOTAL COMPENSABLE HOURS | 140 hrs. |

Measured at a rate of $25 per hour, the Trustee is determined to be entitled to a commission of $3,500. We shall so order.