In the Matter of GULPH WOODS CORPORATION.

Civ. No. 91–4584.
Bankruptcy No. 87–03093S.

United States District Court,
E.D. Pennsylvania.

Jan. 20, 1993.

Edward J. Di Donato, Ciardi, Fishbone & Di Donato, Philadelphia, PA, for trustee.

Mitchell W. Miller, pro se.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

On August 21, 1989, Mitchell W. Miller was appointed trustee in the chapter 7 bankruptcy of Gulph Woods Corporation, a real estate development company established and run by John S. Trinsey, Jr. On April 1, 1991, Mr. Miller filed his Final Report, Accounting and Application for Compensation. Mr. Miller's Report showed the gross realization value of the assets of the estate to be $3,012,864.60. Disbursements totaled approximately $2,000,000. Mr. Miller's application for compensation recited that, in his twenty months as trustee, he had spent approximately 362.25 hours on the affairs of the bankrupt estate. For his services, Mr. Miller requested compensation in the amount of $90,565.93, a figure calculated on the basis of 11 U.S.C. § 326(a). Section 326(a), in conjunction with reciting that the bankruptcy court "may allow reasonable compensation under section 330 ... for the trustee's services," sets a "[l]imitation on compensation of trustee." The § 326(a) limitation is geared to the amount of "moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims."[1] Mr. Miller's requested compensation of $90,565.93 evidently constituted the maximum amount authorizable pursuant to 11 U.S.C. § 326(a).

It appears that the winding up of the Gulph Woods bankruptcy involved a settlement to which all creditors agreed: all creditors other than the Resolution Trust Corporation (RTC) are to receive 100% of their allowed claims; the RTC will receive the balance of the estate assets, estimated at approximately $320,000.[2] At the hearing on Mr. Miller's Report no objections were made to the application for compensation. Thereafter, the bankruptcy court, in a brief opinion, awarded Mr. Miller $42,500 as compensation. The bankruptcy court stated, in pertinent part:

We are not prepared to accord Miller the figure which is yielded by the formula appearing in 11 U.S.C. § 326(a), *i.e.*, in excess of $90,000, as an award in this magnitude is not supported by the Itemization. *See In re Leedy Mortgage Co.*, [126 B.R. 907, 916], Bankr. No. 83–03502S, slip op. at 22 (Bankr.E.D.Pa. April 29, 1991) (application of the formula set forth in 11 U.S.C. § 326(a) establishes the maximum compensation, not a figure to which the Trustee is entitled); and *In re Samson Industries, Inc.*, 108 B.R. 545, 549–51 (Bankr.E.D.Pa.1990) (non-operating Trustee is entitled to only compensation justified by a detailed fee application).

The Itemization contains, particularly in its last six entries, a "lumped" description of services which justifies reductions. *See, e.g., In re St. Joseph's Hospital*, 102 B.R. 416, 418 (Bankr.E.D.Pa. 1989). We find that 350 hours of time for services are compensable.

Establishment of an hourly rate for a Trustee is very difficult in this or any

---

1. The full text of 11 U.S.C. § 326(a) is as follows:

   In a case under chapter 7 or 11, the court may allow reasonable compensation under section 330 of this title of the trustee for the trustee's services, payable after the trustee renders such services, not to exceed fifteen percent on the first $1,000 or less, six percent on any amount in excess of $1,000 but not in excess of $3,000, and three percent on any amount in excess of $3,000, upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims.

2. This description of the settlement is based on the recitals contained in Mr. Miller's brief in this court. One person who has not agreed to the settlement is John S. Trinsey, Jr., Gulph Woods' principal.

case. Miller is an attorney who generally commands at least $100 for his services. *See In re Patronek*, 121 B.R. 728, 730 (Bankr.E.D.Pa.1990). This case presented a difficult assignment, due to the stream of usually frivolous but always vigorous opposition to most of Miller's actions by the Debtor's principal, John S. Trinsey, Jr. Miller's performance of his duties has been reasonably diligent, if not inspired. Considering the pertinent authorities on an appropriate hourly rate, *Leedy Mortgage, supra* [126 B.R. at 918–19] slip op. at 26–27; and *Samson Industries, supra*, 108 B.R. at 549–50, we have decided that a figure in the high range, $125 per hour, is appropriate.

Mr. Miller has appealed to this court from the bankruptcy court's award.[3]

## I.

■ Mr. Miller contends that the bankruptcy court was without power, in the absence of objection from any party, to fix his compensation at a figure lower than the amount requested in his application. Mr. Miller relies on the Third Circuit's rulings with respect to attorney's fee awards in *Cunningham v. City of McKeesport*, 753 F.2d 262 (3d Cir.1985) (*"Cunningham I"*) and *Bell v. United Princeton Properties*, 884 F.2d 713 (3d Cir.1989). *Cunningham I* was a case involving an application for attorney's fees under 42 U.S.C. § 1988. *Bell* was a case involving attorney's fees under ERISA. The gravamen of the principle announced in *Cunningham I* and elaborated upon in *Bell* is contained in the following excerpt from *Bell:*

> In *Cunningham I,* the district court substantially reduced the amount of fees requested in the plaintiff's fee petition, even though the defendants had never "challenge[d] ... the accuracy of the [plaintiff's] affidavit" in support of the fee petition. 753 F.2d at 265–66. We reversed, holding that a district court in a statutory fee case may not reduce the

number of hours claimed by an attorney if the adverse party has declined to "raise a material fact issue as to the accuracy of representations as to hours spent, or the necessity for their expenditure." *Id.* at 267. *Cunningham I* recognized one narrow exception: a judge may reduce requested fees with respect to matters within the judge's personal knowledge—for example, the amount of time spent by counsel at trial or in conference with the judge. *Id.*

> In so deciding, we reasoned first that *sua sponte* reduction of a fee request deprives the fee applicant of her entitlement ... "to offer evidence in support of the reasonableness of her request." *Id.* at 267. And second, because statutory fee litigation is adversarial litigation, there is no need to allow the district court to reduce a fee award on its own initiative. *Id.*

> Bell contends that the principle announced in *Cunningham I* that a judge may not *sua sponte* reduce a request for attorneys' fees should extend beyond civil rights cases and apply equally to ERISA cases. We agree. The reasoning articulated in *Cunningham I* with respect to this principle is not unique to the area of civil rights, and we can see no reason to create a different jurisprudence of fee awards in ERISA cases. *Cf. Delaware Valley Citizens' Council for Clean Air v. Pennsylvania*, 762 F.2d 272, 275 (3d Cir.1985) (holding that the same standards apply for setting "reasonable" attorney's fees under the Clean Air Act's fee shifting provision as under 42 U.S.C. § 1988), *modified on other grounds*, 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987); *see also Independent Federation of Flight Attendants v. Zipes*, [491] U.S. [754] [759 n. 2], 109 S.Ct. 2732, 2735 n. 2, 105 L.Ed.2d 639 (1989).

884 F.2d at 719.

■ Three judges of this court have held that the *Cunningham I/Bell* rule is appli-

---

**3.** Mr. Miller seeks the full $90,565.93 requested in the bankruptcy court, contending that the award of $42,500 was erroneous as a matter of law. Assuming the bankruptcy court did not err in its mode of fashioning the award, it is nonetheless unclear why the award was set at $42,500: Compensation calculated on the basis of 350 "compensable hours" at $125 per hour would seem to call for an award of $43,750.

cable in bankruptcy cases. *See Fleet v. United States Consumer Council,* No. 89–7527, 1990 WL 18926 (E.D.Pa. Feb. 23, 1990, Fullam, J.); *In re Pendleton,* No. 90–1091, 1990 WL 29645 (E.D.Pa. March 15, 1990, Weiner, J.); *In re Jensen's Interiors, Inc.,* 132 B.R. 105 (E.D.Pa.1991, Newcomer, J.). A fourth member of this court—Judge Gawthrop—disagrees. *See In re Rheam of Indiana, Inc.,* 133 B.R. 325 (Bkrtcy.E.D.Pa.1991).[4] In his opinion in *Rheam,* Judge Gawthrop reads the *Cunningham I/Bell* rule as directed to fee awards under fee-shifting statutes in contexts in which it is expectable that a litigant who will bear the burden of a fee award will bring to the attention of the court any asserted deficiencies in the fee application. Judge Gawthrop points out that the incentive of adversariness is frequently absent in the bankruptcy context: even in instances in which a fee award may subtract from the assets distributable to creditors, the impact on any particular creditor may be too modest to warrant mounting an additional round of litigation. Finding Judge Gawthrop's analysis persuasive, I subscribe to his holding in *Rheam.*[5] But, even if I am wrong, application of the *Cunningham I/Bell* rule in the present context does not mean that Trustee Miller is, as a matter of law, entitled to the compensation he requested. What the Court of Appeals held in *Cunningham I,* and reaffirmed in *Bell,* was that "a district court in a statutory fee case may not reduce the number of hours claimed by an attorney if the adverse party has declined to 'raise a material fact issue as to the accuracy of representations as to hours spent, or the necessity for their expenditure.'" *Bell,* 884 F.2d at 719. Were *Cunningham I* and *Bell* applicable in the present context, all it would mean is that the bankruptcy court erred in reducing Mr. Miller's compensable hours from 362.25 to 350.

## II.

Having determined that the bankruptcy court did not err as a matter of law in declining to award Trustee Miller the unobjected-to trustee compensation he sought ($90,565.93), I must now determine whether the compensation actually awarded by the bankruptcy court ($42,500) was appropriate.

As noted above, 11 U.S.C. § 326(a) (the text of which is set forth in footnote 1 *supra*) is a statutory "[l]imitation on compensation of trustee." The statutory formula, keyed to the "moneys disbursed ... by the trustee to parties in interest," is a legislatively determined ceiling on "reasonable compensation." A companion statutory provision, 11 U.S.C. § 330(a)(1), states the criteria which are to govern awards of "reasonable compensation" to trustees and other officers of the bankrupt estate:

> (a) After notice to any parties in interest and to the United States trustee and a hearing, and subject to sections 326,

---

**4.** *Cf. In re Greenley Energy Holdings of Pa., Inc.,* 102 B.R. 400, 402 (Bkrtcy.E.D.Pa.1989).

**5.** I subscribe to the holding in *Rheam,* and I follow it here, notwithstanding that this case does not appear to be one in which there is no creditor with an appreciable incentive to resist the compensation application: Under the settlement summarized on p. 604, *supra,* it appears that RTC has a substantial interest in the amount of any award to Mr. Miller; each dollar of trustee compensation effects a *pro tanto* reduction of the distribution to RTC.

I also agree with Judge Gawthrop that the absence of objection from the United States Trustee to a trustee's application for compensation does not relieve the bankruptcy court of authority—or, indeed, of obligation—to make its own independent determination of what the trustee's "reasonable compensation" should be.

*See* 133 B.R. at 332. See also *In re Leedy Mortg. Co.,* 126 B.R. 907, 912 (Bkrtcy.E.D.Pa.1991), in which the United States Trustee's counsel (an assistant United States attorney) advised the court as follows: "... [H]e stated that this court can and should review applications for compensation even when the UST himself has not filed Objections thereto. He noted that a shortage of resources in the UST's office and that office's confidence that this court would carefully review all such applications irrespective of the UST's filing same prompted the UST to file objections in only a small percentage of cases where objections were warranted." In my view, the fact that there is no objection from the United States Trustee, or from any creditors who may have a substantial interest, may, depending on the circumstances, carry some weight; but it cannot, standing alone, be dispositive.

328, and 329 of this title, the court may award to a trustee, to an examiner, to a professional person employed under section 327 or 1103 of this title, or to the debtor's attorney—

(1) reasonable compensation for actual, necessary services rendered by such trustee, examiner, professional person, or attorney, as the case may be, and by any paraprofessional persons employed by such trustee, professional person, or attorney, as the case may be, based on the nature, the extent, and the value of such services, the time spent on such services and the cost of comparable services other than in a case under this title;

"Thus," as Judge VanArtsdalen has explained, "trustee fees are subject to two separate limitations. First, section 330(a) allows a trustee 'reasonable compensation' based on the nature, extent, and value of such services including necessary fees for persons employed by the trustee. Second, section 326(a) works to put a cap on trustee compensation in excess of a specified amount determined by a formula in that section." *In re Greenley Energy Holdings of Pa., Inc.*, 102 B.R. 400, 403 (Bkrtcy. E.D.Pa.1989).

On page 604, *supra* of this Memorandum, there is quoted the portion of the bankruptcy court's opinion which chiefly explains the bankruptcy court's determination that the trustee should be compensated on the basis of his hours of compensable service, at a rate of $125 an hour. Central to the bankruptcy court's determination was the recital that:

Establishment of an hourly rate for a Trustee is very difficult in this or any case. Miller is an attorney who generally commands at least $100 for his services. *See In re Patronek*, 121 B.R. 728,

730 (Bankr.E.D.Pa.1990). This case presented a difficult assignment, due to the stream of usually frivolous but always vigorous opposition to most of Miller's actions by the Debtor's principal, John S. Trinsey, Jr. Miller's performance of his duties has been reasonably diligent, if not inspired. Considering the pertinent authorities on an appropriate hourly rate, *Leedy Mortgage, supra* [126 B.R. at 918–19], slip op. at 26–27; and *Samson Industries, supra*, 108 B.R. at 549–50, we have decided that a figure in the high range, $125 per hour, is appropriate.[6]

■ It is evident from the foregoing that the bankruptcy court considered—as 11 U.S.C. § 330(a)(1) requires—the "time spent on such [trustee] services," but it is not clear that consideration was given to "the cost of comparable services other than in a case under this title."[7] Moreover, the bankruptcy court's calculation of the trustee's compensable hours, while furnishing a limited perspective on the "extent ... of such [trustee] services," tells little about the "value of such services." To be sure, the bankruptcy court characterized the trustee's responsibilities as "difficult," due to Mr. Trinsey's "usually frivolous but always vigorous opposition," and the bankruptcy court also opined that the trustee's performance "has been reasonably diligent, if not inspired." However, the bankruptcy court's opinion does not offer a basis for appraising the worth to the estate of the trustee's services. We are advised by the trustee, in his brief on appeal, that "the trustee has performed a small miracle," Brief of Appellant Trustee Mitchell W. Miller, page 18.[8] But the bankruptcy court's opinion sheds little light on whether, in the view of the bankruptcy court, the trustee worked a miracle, small or large, or, if the

---

**6.** In the balance of its opinion, the bankruptcy court referred to other cases in which compensation was geared to hours of compensable service at rates both lower than and higher than $125.

**7.** The rationale for the statutory directive that a comparison be made with "the cost of comparable services other than in a case under this title" is explained by Judge Van Artsdalen in *In re*

*Greenley Energy Holdings of Pa., Inc.*, 102 B.R. 400, 406–07 (Bkrtcy.E.D.Pa.1989).

**8.** The phrase "small miracle" appears to derive from a secured creditor's characterization of the trustee's accomplishments in *In re Greenley Energy Holdings of Pa., Inc.*, 102 B.R. 400, 401 (Bkrtcy.E.D.Pa.1989), a characterization acquiesced in by Judge VanArtsdalen. See Brief of Appellant Trustee Mitchell W. Miller, p. 19.

trustee did not work miracles, to what extent the trustee's "diligent, if not inspired" performance resulted in the achievement of reasonably expectable goals.

It may well be that the bankruptcy court's determination of Mr. Miller's "reasonable compensation"—a determination that awarded Mr. Miller less than half the amount he sought—was entirely warranted.[9] But the opinion explaining the award is too spare for meaningful review in this court. Accordingly, the order of the bankruptcy court setting the trustee's compensation will, in an accompanying order, be vacated and the matter remanded to the bankruptcy court for a further hearing and reconsideration by the bankruptcy court in the light of this Memorandum.

9. But see note 3, *supra,* pointing out that it is unclear why the award was fixed at $42,500 rather than $43,750.