**Paul S. SEGAL, Plaintiff, Appellee,**

v.

**GILBERT COLOR SYSTEMS, INC., Defendant, Appellant.**

**No. 84–1130.**

United States Court of Appeals, First Circuit.

Argued Sept. 5, 1984.

Decided Oct. 11, 1984.

Meredith Peterson Tufts, Boston, with whom Fine & Ambrogne, Boston, was on brief, for defendant, appellant.

Francis G. Holland, Nashua, N.H., with whom Holland & Aivalikles, Nashua, N.H., was on brief, for plaintiff, appellee.

Before CAMPBELL, Chief Judge, BREYER, Circuit Judge, and SELYA,* District Judge.

SELYA, District Judge.

Paul S. Segal brought this suit against his former employer, Gilbert Color Systems, Inc. (Gilbert), charging that Gilbert had discharged him because of the demands inherent in his service as a federal grand juror, in violation of 28 U.S.C. § 1875 (the Act).[1] While Segal originally

---

\* Of the District of Rhode Island, sitting by designation.

1. 28 U.S.C. § 1875 provides in pertinent part:

(a) No employer shall discharge, threaten to discharge, intimidate, or coerce any permanent employee by reason of such employee's jury service, or the attendance or scheduled

contended, in a pendent state law claim, that Gilbert had also wrongfully breached the employment contract between the parties, he eventually abandoned that initiative. The case was tried on the § 1875 claim before a jury, which returned a general verdict for the plaintiff in the amount of $30,000.00.

Each party then filed a pair of post-trial motions. Gilbert sought either to reduce the verdict or to set it aside; Segal countered by asking the district court to tack on prejudgment interest and to award counsel fees. The district judge granted three of these four motions: he (i) shrunk the verdict to $22,341.90, (ii) granted interest on the lessened verdict amount from the date suit was filed at an interest rate of 10% per annum, and (iii) awarded counsel fees to the appellee in the sum of $7,447.68 (one-third of the reduced verdict). Gilbert appealed. Segal did not.

In this proceeding, Gilbert no longer contests liability. Rather, its remonstrance is limited to the supposed excessiveness of the verdict as pared by the district court, the propriety of the award of prejudgment interest, and the amount and manner of calculation of attorneys' fees. We will address these points seriatim, presenting in connection with each asseveration the facts as they relate to the particular contention.

## I. *Excessiveness of Verdict*

We need not tarry long on Gilbert's lament that the verdict, even after the remittitur, is overgenerous. The evidence before the jury revealed that Segal was hired in July of 1979 as a salesman for the appellant's color separator services. His base salary was $20,000.00 per year. His arrangement with Gilbert also called for the payment of commissions over and above salary if his sales performance topped a set annual plateau. There was evidence in the record that Gilbert's projections showed some expectation that Segal would earn, between salary and commissions, upward of $30,000.00 yearly.[2] In addition, Segal received the use of a company car[3] and a fringe benefit insurance package. Segal valued the former at $100.00 weekly, and automobile repair receipts limned the pertinent particulars of the vehicle (make, model, mileage, year, etc.). Gilbert's comptroller estimated the cost of the insurance package at $85.00 monthly.

Segal began his grand jury service in the United States District Court in Boston, Massachusetts on November 5, 1979. The term of the grand jury was eighteen months. On November 8, 1979, Segal was dismissed by his employer—a dismissal which, as Gilbert concedes for purposes of this appeal, was in derogation of 28 U.S.C. § 1875. Except for his sporadic grand jury duties, Segal was unemployed from November 9, 1979 until the end of March, 1980. He then worked briefly as a salesman for a video equipment dealer, but the company did not survive. He remained unemployed thereafter until November, 1981, when he obtained another (and more remunerative) sales position. The record provides adequate support for an inference that Segal made bona fide efforts during the period to procure suitable alternate employment.

 This court has consistently declined to play Monday morning quarterback in reviewing a jury's assessment of damages. A verdict should stand unless it is

---

attendance in connection with such service, in any court of the United States.

**2.** Although Segal's sales record during his first (and, as matters turned out, last) few months on Gilbert's payroll was less than exhilarating, there was evidence in the record to counter any inference of ineffectuality on his part; some time was spent as a trainee, and an additional period was devoted to covering for vacationing fellow employees. And, giving the plaintiff the benefit of all favorable inferences on the de-

fendant's claim of excessiveness, *see Cleverly v. Western Electric Co.,* 594 F.2d 638, 641 (8th Cir.1979); *Betancourt v. J.C. Penny Co.,* 554 F.2d 1206, 1207 (1st Cir.1977), the jury had ample room to find that Segal would have supplemented his base stipend with substantial commission income had his employment been continued.

**3.** The automobile arrangement went into effect in the Fall of 1979. Prior thereto, Segal used his own car for business travel, and Gilbert reimbursed him.

"grossly excessive," "inordinate," "shocking to the conscience of the court," or "so high that it would be a denial of justice to permit it to stand." *McDonald v. Federal Laboratories*, 724 F.2d 243, 246 (1st Cir. 1984), quoting *Grunenthal v. Long Island R.R. Co.*, 393 U.S. 156, 159 & n. 4, 89 S.Ct. 331, 333 & n. 4, 21 L.Ed.2d 309 (1968); *Betancourt*, 554 F.2d at 1207; *LaForest v. Autoridad de las Fuentes Fluviales*, 536 F.2d 443, 447 (1st Cir.1976). Even in cases such as the one at bar, which involve only economic loss, review must proceed with great deference for the jury's assessment: "the jury is free to select the highest figures for which there is adequate evidentiary support." *Kolb v. Goldring, Inc.*, 694 F.2d 869, 872 (1st Cir.1982). And, such a verdict will be reduced or set aside only if it is shown to exceed "any rational appraisal or estimate of the damages that could be based upon the evidence before the jury." *Glazer v. Glazer*, 374 F.2d 390, 413 (5th Cir.), *cert. denied*, 389 U.S. 831, 88 S.Ct. 100, 19 L.Ed.2d 90 (1967), quoted with approval in *Kolb*, 694 F.2d at 871.

Our focus in this case must, of course, be not on the verdict itself, but on the verdict as adjusted by the trial judge. As previously noted, the district court did trim the verdict; it deducted from the jury's award the amounts earned by the appellee attributable to his grand jury service and the monies which he garnered in his short-lived employment in the Spring of 1980.[4] The resultant total—$22,341.90—is not beyond the pale; given the facts of this case, it does not even hover near the periphery. The jury had before it a smorgasbord of evidence: it could rationally have found damages in excess of $30,000.00 by any one of a number of combinations of salary, commissions, and fringe benefits

for all or some substantial part of the eighteen month period.[5]

We have made the "detailed appraisal of the evidence bearing on damages" which *Gruenthal*, 393 U.S. at 159, 89 S.Ct. at 333, demands; and we are completely satisfied, on this record, that the verdict is supportable "as a matter of just and reasonable inference" from the evidence. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687, 66 S.Ct. 1187, 1192, 90 L.Ed. 1515 (1946). The sum which Segal will receive for Gilbert's egregious breach of faith fails to shock—or even to tweak—our collective conscience. Pegging Segal's compensatory damages for wrongful discharge at $22,-341.90 cannot be characterized as excessive or inordinate. The verdict, particularly after its massaging at the hands of the district judge, falls well "within the universe of possible awards that are supported by the evidence ...", *Clark v. Taylor*, 710 F.2d 4, 14 (1st Cir.1983), and must be allowed to stand.

## II. *Prejudgment Interest*

We turn next to the district court's award of prejudgment interest. The essential facts pertinent to this issue are not in dispute: the appellee did not request an instruction on prejudgment interest; the judge did not, therefore, charge the jury in respect to such interest; no stipulation was entered into anent the subject; no objection was taken to the interest-free charge as given; and the jury returned only a general verdict.

The question of Segal's entitlement to interest rose, like Lazarus, from the dead only after the jury had spoken; it was raised by the appellee's counsel for the

---

4. Segal has acceded to the district court's action, and has indicated his assent to the remittitur. He has filed no cross-appeal in this court. Accordingly, we need not reach the question of whether or not the jury's verdict was properly pruned below.

5. It would be senseless to analyze all of the permutations which could lucidly have produced such a verdict. One example should suffice. For the period from the date of Segal's firing to

the end of 1980, a span of one year and seven weeks, the jury could have found that his gross damages comprised close to $35,000.00 (roughly $23,000.00 in wages, $10,000.00 or so in commissions, and over $1,000.00 in insurance benefits). And, if mitigating off-sets were not fully accounted for, the trial judge surely cured any perceived shortcoming in this regard by granting the remittitur.

first time in a post-trial motion. In granting that motion, the district court was not explicit in its reasoning; yet, by fair implication from the trial judge's statements on the counsel fee issue, *see* text *post,* he was doubtless motivated by his view that "while the statute may or may not be considered punitive, at least it is remedial and the case should be a tocsin to all employers who impugn the integrity of our inviolate jury system." *Segal v. Gilbert Color Systems,* No. C–80–17–L, slip op at 6–7 (D.N.H. Dec. 29, 1983). But, although we share and echo these sentiments we cannot as a matter of law set the issue to rest so easily.

Gilbert's assignment of error does not condemn the availability of prejudgment interest per se in a § 1875 action; rather, the appellant argues that the issue was one for jury consideration. Because Segal forfeited his opportunity to have the fact-finders pass upon his claim for interest, *see* Fed.R.Civ.P. 51, the asseveration runs, the district judge was wrong in augmenting the verdict in this manner. The appellee demurs. He urges, first, that prejudgment interest should be allowable in § 1875 cases (a concept which, as noted above, Gilbert does not directly dispute); and proceeds to argue that, since the statute is designed both to deter undesirable conduct and to make whole the victims of such conduct, prejudgment interest is an essential adjunct to recovery. In short, the appellant visualizes his entitlement to interest as a matter of principle.

Our consideration of this issue must start with 28 U.S.C. § 1875 itself, a statutory enactment which is as silent as the tomb on the topic of prejudgment interest. Nothing in the text of the Act itself fairly addresses the question.

We have next examined the legislative history of § 1875. Until quite recently, Congress had not faced up to the problem of curbing an employer who was hostile to the idea of federal jury duty and who used his economic leverage to discourage his workers from meeting the obligations of such service or who punished them for doing so. While an occasional effort was made to use the contempt powers of the district courts to thwart such shenanigans, *e.g., In re Adams,* 421 F.Supp. 1027, 1030–31 (E.D.Mich.1976), such a remedy was largely ineffectual; under optimum circumstances, it could only be invoked when the errant conduct of the employer was brought to the court's attention, and the prospective juror, with his job on the line, was rarely willing to take so adventurous a step. Thus, the Judicial Conference of the United States in 1971 authored and proposed an embryonic version of what was eventually to emerge as 28 U.S.C. § 1875. While initially drafted with an eye to criminal penalties, § 1875, as enacted by the Congress in 1978, shifted the focus to civil remedies. *See* H.R.Rep. No. 95–1652, 95th Cong., 2nd Sess. reprinted in 1978 U.S.Code Cong. and Ad.News, 5477, 5480–81 (1978 House Report). The Congress left little doubt as to the purpose of the bill:

> The proposed legislation would provide statutory employment protection to Federal jurors...by giving the district courts jurisdiction over legal actions by aggrieved employee-jurors to redress their rights. The enactment of this provision wousld be desirable in redressing the present disparity of bargaining position between a harassing employer and his employee who is summoned for jury duty in a Federal court. It would also place employers on notice as to their legal duty not to interfere with jury service by employees and would offer employees the assurance that their rights in this regard will be protected by law.

*Id.* at 5480.

And, with respect to an itemization of damages, Congress did nothing more than parrot the statutory language, *see* 28 U.S.C. § 1875(b)(1), opining that the aggrieved worker would be entitled to recover "any loss of wages or other benefits suffered on account of such violation." 1978 House Report at 5488.

In sum, both the Act and its legislative history are barren of any reference to prejudgment interest. We are aware of no auxiliary federal statute which calls for

prejudgment interest in this context. State law is of no assistance in this regard, given the purely federal nature of the cause of action. *Compare Sanabria v. International Longshoremen's Association Local 1575*, 597 F.2d 312, 313–14 (1st Cir.1979) (state prejudgment interest rule inapplicable to fair representation case brought under 29 U.S.C. § 185) *with Hobart v. O'Brien*, 243 F.2d 735, 744–45 (1st Cir.), *cert. denied*, 355 U.S. 830, 78 S.Ct. 42, 2 L.Ed.2d 42 (1957) (prejudgment interest under state law available in diversity action). And, no other court has, to our knowledge, heretofore spoken on the availability of prejudgment interest in respect to 28 U.S.C. § 1875. It is with this paucity of direct guidance that we turn to the precise issue before us—an issue which we must determine under general precepts of federal law. *Rodgers v. United States*, 332 U.S. 371, 373, 68 S.Ct. 5, 6, 92 L.Ed. 3 (1947); *Royal Indemnity Co. v. United States*, 313 U.S. 289, 296, 61 S.Ct. 995, 997, 85 L.Ed. 1361 (1941); *Young v. Godbe*, 15 Wall. (82 U.S.) 562, 565, 21 L.Ed. 250 (1872); *Robinson v. Watts Detective Agency*, 685 F.2d 729, 741 (1st Cir.1982), *cert. denied*, 459 U.S. 1204, 103 S.Ct. 1191, 75 L.Ed.2d 436 (1983).

Justice Black noted in *Rodgers, supra,* that "the failure to mention interest in statutes which create obligations has not been interpreted by [the] Court as manifesting an unequivocal congressional purpose that the obligation shall not bear interest." 332 U.S. at 373, 68 S.Ct. at 7. Rather,

> [A] persuasive consideration in determining whether such obligations shall bear interest is the relative equities between the beneficiaries of the obligation and those upon whom it has been imposed. And this Court has generally weighed these relative equities in accordance with the historic judicial principle that one for whose financial advantage an obligation was assumed or imposed, and who has suffered actual money damages by another's breach of that obliga-

tion, should be fairly compensated for the loss thereby sustained.

*Id.*

■ In view of the manifest purposes of 28 U.S.C. § 1875, *see generally* 1978 House Report, an award of interest on lost wages and kindred benefits harmonizes nicely with the objectives of the statute. Indeed, if an aggrieved employee is to be made whole in the face of his employer's insensitivity to the societal value of jury service, such an award may be an invaluable remedial component. We hold, therefore, that prejudgment interest can be recovered under the Act. The "relative equities" demand no less.

■ Our inquiry, however, does not end at this point. Though prejudgment interest was generically appropriate in Segal's case, a question still remains as to whether it was properly claimed and awarded. *Furtado v. Bishop*, 604 F.2d 80 (1st Cir.1979), *cert. denied*, 444 U.S. 1035, 100 S.Ct. 710, 62 L.Ed.2d 672 (1980) (*Furtado I*) is instructive. In *Furtado I*, Judge Bownes, writing for a unanimous panel of this court, undertook a similar analysis of the availability of prejudgment interest in civil rights actions under 42 U.S.C. § 1983, and concluded:

> Assuming *arguendo* that prejudgment interest was discretionary, federal law dictated that the jury should decide whether to assess it. But the question of prejudgment interest was not submitted to the jury, nor did plaintiffs ask that the jury be instructed on it. Consequently, the award of prejudgment interest must be stricken.

*Furtado I,* 604 F.2d at 98 (citations omitted).

While an effort might be made to distinguish *Furtado I* on the ground that "section 1983 creates a specie of tort liability, and prejudgment interest on the typical unliquidated tort claim was not recoverable at common law," *id.,* that argument was both anticipated and undercut by this court's decision in *Kolb, supra. Kolb* was an action brought under the Age Discrimination in Employment Act (ADEA), 29

U.S.C. §§ 621–634. Kolb's ADEA claim involved purely economic losses in the nature of back pay and fringe benefits. We held flatly that, since the plaintiff did not request prejudgment interest from the jury, he "was therefore barred from subsequently seeking it from the judge." *Kolb*, 694 F.2d at 875. We regard *Kolb* as a qualtagh. It is controlling here.

As *Furtado I* and its progeny adequately evince, we are "hesitant to impose an inflexible rule requiring—or barring—prejudgment interest." *Kolb*, 694 F.2d at 875 n. 6. While we could perhaps envision situations where prejudgment interest should be mandatory rather than discretionary, § 1875 does not, on its face, present such a compelling case. *Cf. Earnhardt v. Puerto Rico*, 744 F.2d 1 at 3 (1st Cir.1984) (the question of whether prejudgment interest is necessary to make a Title VII plaintiff whole in a back-pay suit rests in the discretion of the trier of the facts). We do not know how the jury reached its verdict, nor can we precisely identify the nature and the chronometry of the components which contributed to the award. These uncertainties simply reinforce the wisdom of the *Kolb* rule: if a jury is to assess damages under 28 U.S.C. § 1875, it should simultaneously be entrusted with the responsibility of factoring prejudgment interest into the calculus to the extent, for the period(s), and at the rate that it deems proper in order to make sure that the plaintiff receives his due.

The appellee, who failed entirely to preserve a claim for prejudgment interest before the case was submitted to the jury, was not entitled under federal common law to a post-hoc award of such interest. The district court erred in granting Segal's motion.

## III. Counsel Fees

The remaining issues on this appeal center around the district court's award of counsel fees to the appellee. Gilbert mounts a two-pronged attack on this rul-

ing: it urges, first, that the fees so granted should have been limited to $1,000.00; and second, that even if that ceiling did not apply, the district court failed properly to compute the size of the award.

### A. Applicability of § 3006A Limits

■ The appellant's initial contention implicates the express provisions of § 1875(d) of the Act. Section 1875(d)(1) provides in its entirety:

An individual claiming that his employer has violated the provisions of this section may make application to the district court for the district in which such employer maintains a place of business and the court shall, upon finding probable merit in such claim, appoint counsel to represent such individual in any action in the district court necessary to the resolution of such claim. Such counsel shall be compensated and necessary expenses repaid to the extent provided by section 3006A of title 18, United States Code.

And, § 1875(d)(2) provides in pertinent part that "the court may award a prevailing employee who brings such action [for violation of the Act] by retained counsel a reasonable attorney's fee...". The interleaving of these provisions potentially presents a plethora of prickly problems, especially in light of the difficulties so obviously attendant upon bending the framework of 18 U.S.C. § 3006A (which, after all, is a statute designed to govern the compensation of court-appointed counsel in the defense of those accused of crime) to fit the exigencies of 28 U.S.C. § 1875. But, there is no need on the record before us to explore this labyrinthine nether world.

Prior to the time this suit was commenced, Segal filed an application for appointment of counsel pursuant to "Title 28, United States Code, Section 875(b)."[6] A copy of the motion was served upon Gilbert. By handwritten entry dated December 21, 1979, the magistrate allowed the motion "pursuant to the provisions of 28 U.S.C. § 1875(d)." Since no civil action

---

**6.** That reference was an obvious misnomer. There is no such section of the United States

Code. Plainly, the motion intended to allude to 28 U.S.C. § 1875(d)(1).

was then pending, it was necessary for housekeeping purposes to assign a miscellaneous petition number to the application. Immediately above the magistrate's order, therefore, there is written in the same hand the legend "M 79–61." On January 8, 1980, the appellee moved to vacate the appointment of counsel. That motion, also filed in M 79–61, was allowed by the magistrate on January 11, 1980. It was never served on Gilbert. When filed on January 14, 1980, this case proceeded from its very inception with Segal's lawyer acting as retained counsel.

The appellant now complains that it did not receive notice of the motion to vacate, and that it "would be both unjust and inequitable to hold Gilbert Color liable for attorneys' fees in the absence of proper notice of its potential liability beyond the [§ 3006A] statutory maximum." Appellant's Brief at 22. This argument is, at bottom, an empty exercise in casuistry.

If Gilbert received Segal's application without the endorsement thereon of the magistrate's order, it was in no way misled. All the appellant could have known was that Segal was attempting to secure the appointment of counsel. And, if Gilbert received the application with the magistrate's action endorsed thereon, it was thereby alerted to the existence of the miscellaneous file (M 79–61) and was chargeable with entering an appearance therein if it wished it to be heard, *see* D.N.H. Local Rule 6(b), or with monitoring the docket therein if it wished to apprise itself of developments. *Cf.* Fed.R.Civ.P. 77(d). The appellant did neither. Had it done so, the revocation of counsel's appointed status was there to be found. Accordingly, there is no colorable basis upon which Gilbert can in good faith claim reliance on the appointment of counsel to its detriment.[7] From the time that proceedings began in the instant action, the appellee's attorney was acting as private counsel; and the appellant was placed on fair notice (by the provisions of 28 U.S.C. § 1875(d)(2)) vis-a-vis its putative liability for "a reasonable attorney's fee," *id.*, unrestricted by the contours of 18 U.S.C. § 3006A.

### B. *Calculation of the Award*

■ The second theorem on which the appellant questions the fee award gives us considerably more pause. Although the district court did make a passing reference to the time expended by Segal's lawyer in the prosecution of the action and to a general range of billing rates, *Segal v. Gilbert Color Systems*, No. C–80–17–L, slip op. at 1–2 (D.N.H. Dec. 29, 1983), it is clear that the fee was awarded on a percentage basis. The district court stated:

> 28 U.S.C. 1875(d) relates to reasonable attorney's fees which may be allowed to a prevailing employee as well as expenses.
>
> Counsel for the plaintiff took this case on a contingency basis and should be awarded attorney's fees on that basis in the sum of $7,447.68.
>
> The court in awarding attorney's fees based on one-third of the recovery is conversant with the provisions of 28 U.S.C. 1875...

*Id.* at 6.

It is true that no court has yet taken the measure of what comprises a "reasonable attorney's fee" within the purview of this Act. We have, however, long since adopted a time-and-rate-based method of calculation in cases involving the fee-shifting provisions of those federal statutes which do not expressly dictate an alterna-

---

7. In any event, the appellant has pointed to no rule or statute which required service upon it of either the § 1875(d)(1) order appointing counsel or the subsequent motion to vacate. Fed.R.Civ.P. 77(d) provides in substance that the clerk shall serve notice of an order only upon parties who have appeared. The order was not one "required by its terms to be served," Fed.R.Civ.P. 5(a), nor was the motion a "pleading subsequent to the original complaint," *id.*; therefore, Segal was not under an obligation to serve either document upon Gilbert under Fed.R.Civ.P. 5. And, the Local Rules of the district court, promulgated in pursuance of Fed.R.Civ.P. 83, appear specifically to exempt ex parte motions and orders (a classification into which these pre-suit proceedings neatly fit) from the ordinary service procedures. *See, e.g.,* D.N.H. L.R. 11(c).

tive method. *E.g.*, *King v. Greenblatt*, 560 F.2d 1024, 1026–27 (1st Cir.1977), *cert. denied*, 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978) (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974)).[8] And, the Supreme Court has recently placed its imprimatur upon this construct, indicating in the plainest of terms that the "initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Blum v. Stenson*, —— U.S. ——, 104 S.Ct. 1541, 1543–44, 79 L.Ed.2d 891 (1984). *See also Hensley v. Eckerhardt*, 461 U.S. 424, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983).

While the rule has grown up primarily in the rugged mountains of 42 U.S.C. § 1988, we see no reason to choose a different measure on the virgin terrain of 28 U.S.C. § 1875.[9] The underlying policy concerns of the counsel fee provision in civil rights actions are virtually indistinguishable from those upon which § 1875(d) rests.[10]

**8.** In a logical extension of this principle, we have recently applied this yardstick to state fee-shifting statutes which are similarly devoid of specific self-contained criteria. *E.g.*, *Virzi Subaru, Inc. v. Subaru of New England*, 742 F.2d 677 at 681 (1st Cir.1984) (involving previously unconstrued Connecticut franchise statute).

**9.** In applying this method (most prominently associated with the *Johnson* court's Title VII decision and cited with approval by both houses of Congress when the Fees Act, 42 U.S.C. § 1988, was amended in 1976, *see* S.Rep. No. 1011, 94th Cong., 2d Sess. 6, reprinted in 1976, U.S.Code Cong. & Admin.News 5908, 5913; H.R. Rep. No. 1558, 94th Cong., 2d Sess. 9 (1976)), to yet another fee-award statute, we are hardly breaking new ground. The time-and-rate-based approach has been widely used to compute reasonable attorneys' fees under a salmagundi of similarly inexplicit statutes. *See, e.g.*, *United States v. Nesglo, Inc.*, 744 F.2d 887 at 892 (1st Cir.1984) (Counsel's Liability for Excessive Costs, 28 U.S.C. § 1927); *Newhouse v. Robert's Ilima Tours Inc.*, 708 F.2d 436, 441 (9th Cir. 1983) (Fair Labor Standards Amendments, 29 U.S.C. § 216(b)); *Illinois v. Sangamo Construction Co.*, 657 F.2d 855, 862 (7th Cir.1981) (Clayton Act, 15 U.S.C. § 15); *Jorstad v. IDS Realty Trust*, 643 F.2d 1305, 1312 (8th Cir.1981) (Securities Act of 1933, 15 U.S.C. § 77k(e)); *Ryan-*

We recognize and reaffirm the broad discretion accorded district judges in fee-setting matters. *See Gabriele v. Southworth*, 712 F.2d 1505, 1506 (1st Cir.1983); *Maceira v. Pagan*, 698 F.2d 38, 39 (1st Cir.1983). Yet, we have repeatedly emphasized that a "reasonable" counsel fee cannot be equated reflexively with a percentage of the dollar recovery. In *Furtado II*, where this court condemned just such an automatic controlling percentage, we clearly held that "a one-third-of-the-total recovery rule may not be used either as a ceiling or as a floor for the award." 635 F.2d at 920. As we had remarked earlier in *Sargeant v. Sharp*, 579 F.2d 645, 648 (1st Cir.1978):

> The Court should address the issue of entitlement as an antecedent and separate question, ... without regard to the existence of a private fee agreement. Should it decide that an award of fees is warranted, the Court should then set a reasonable fee. This determination too should be divorced from consideration of a fee arrangement.

*Walsh Stevedoring Co., Inc. v. Trainer*, 601 F.2d 1306, 1318–19 (5th Cir.1979) (Longshoreman and Harbor Workers Compensation Act, 33 U.S.C. § 928); *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 (4th Cir.), *cert. denied*, 439 U.S. 934, 99 S.Ct. 329, 58 L.Ed.2d 330 (1978) (Truth-in-Lending Act, 15 U.S.C. § 1640(a)(3)); *Matter of First Colonial Corp. of America*, 544 F.2d 1291, 1299–1300 (5th Cir.), *cert. denied*, 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977) (Bankruptcy Act, 11 U.S.C. §§ 205, 641, 643, 644); *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69–70 (9th Cir.1975), *cert. denied*, 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976) (Labor Management Relations Reporting and Disclosure Act, 29 U.S.C. §§ 412, 529); *Wolfe v. Wolfe*, 570 F.Supp. 826, 829–32 (D.S.C.1983) and *Campiti v. Walonis*, 467 F.Supp. 464, 467 (D.Mass. 1979) ("Federal Wiretap Act," 18 U.S.C. § 2520); *Save Our Sound Fisheries Ass'n. v. Callaway*, 429 F.Supp. 1136, 1147 (D.R.I.1977) (Federal Water Pollution Control Act, 33 U.S.C. § 1365).

**10.** Such concerns are generally thought to entail (i) the encouragement of meritorious suits which might not otherwise be brought; (ii) the deterrence of obstructive delaying tactics in the litigation; and (iii) the minimization of violations by an increase in the wrongdoer's liability. *E.g.*, *Furtado v. Bishop*, 635 F.2d 915, 918 n. 5 (1st Cir.1980) (*Furtado II*).

We do not imply that the worth of legal services must necessarily be assessed in total isolation from the size of a verdict. But, while a client's monetary recovery may sometimes be taken into account in determining the remuneration to be awarded for legal services, *Wojtkowski v. Cade,* 725 F.2d 127, 131 (1st Cir.1984); *Furtado II,* 635 F.2d at 920; *but cf. Blum,* 104 S.Ct. 1548-49, it may not stand naked and unadorned as the be-all and the end-all of the architecture of a fee award. Rather, a "reasonable attorney's fee" should be arrived at by calculating the number of hours reasonably expended multiplied by a reasonable hourly rate in order to arrive at the lodestar. And, once a lodestar figure is ascertained, it may then be adjusted as appropriate. *See Gabriele,* 712 F.2d at 1506; *Furtado II,* 635 F.2d at 920; *Copeland v. Marshall,* 641 F.2d 880, 892-94 (D.C.Cir.1980); *Lund v. Affleck,* 587 F.2d 75, 77 (1st Cir.1978). In this case, the district judge eschewed this approach in favor of the percentage rule which we had previously rejected. In doing so, he erred.

It is, therefore, requisite that we return this matter to the court below so that a reasonable counsel fee may be fixed in line with our established precedents. We do not mean to suggest that the dollar amount of the fee as awarded by the district court was unreasonable; indeed, given the results obtained and the admittedly sketchy information in the record on appeal, it appears modest. But, whether this remand results merely in the reaffirmation of the fee previously set, or in a greater or lesser fee, is not the point: the interests of both precedent and orderly procedure prohibit such short-cuts, whether or not they coincidentally lead to the correct destination in a given case.

## IV. *Conclusion*

To recapitulate, we hold (i) that the district court, after trimming the jury verdict, properly refused further reductions therein; (ii) that the appellant's alternative motion to set aside the verdict on grounds of excessiveness was meritless; (iii) that pre-judgment interest was incorrectly appended to the award of damages after the fact; (iv) that the appellee was entitled to counsel fees unlimited by the strictures of 18 U.S.C. § 3006A; and (v) that the size of the fee award must be refigured by the district court on a time-and rate-based formula. We hold further that, inasmuch as the appellee prevailed in substantial part before this court, the district judge should include in the amended counsel fee award a reasonable attorney's fee for services rendered in connection with this appeal.

Accordingly, the judgment below is

*Affirmed in part, reversed in part; and the case is remanded to the district court for further proceedings consistent herewith. Costs awarded in favor of appellee.*