# United States Court of Appeals
## For the First Circuit

No. 08-1098

TERESITA MERCADO-BERRIOS,

Plaintiff, Appellee,

v.

MARÍA CANCEL-ALEGRÍA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Camille Vélez-Rivé, U.S. Magistrate Judge]

Before

Lipez, Baldock,[*] and Howard,
Circuit Judges.

Laura Maldonado-Rodríquez, with whom Saul Roman Santiago was on brief, for appellee.
Susana I. Peñagarícano-Brown, Assistant Solicitor General, with whom Irene S. Soroeta-Kodesh, Solicitor General, Leticia Casalduc-Rabell, Deputy Solicitor General, and Zaira Z. Girón-Anadón, Deputy Solicitor General, were on brief, for appellant.

June 30, 2010

_____

[*]     Of the Tenth Circuit, sitting by designation.

**LIPEZ**, <u>Circuit Judge</u>.  This case involves claims for political discrimination and speech retaliation in violation of the First Amendment. Plaintiff Teresita Mercado-Berrios worked as a transitory government employee in Puerto Rico.  Toward the end of her term of employment, she applied for, and was denied, a permanent position.  She subsequently filed suit under the Civil Rights Act of 1871, 42 U.S.C. § 1983, alleging that defendant María Cancel-Alegría, who was responsible for the hiring decision, violated the First Amendment by considering her political affiliation and protected speech activity in the hiring decision. After a six-day trial, the jury returned a verdict for Mercado-Berrios on both theories, awarding her $213,000 in compensatory damages and $1,000,000 in punitive damages.

Cancel-Alegría now challenges both the imposition of liability and the amount of damages.  Considering the arguments that Cancel-Alegría has made, and disregarding others that might have been made but were not, we affirm the judgment as to the speech retaliation claim and compensatory damages, reverse as to the political discrimination claim, vacate the punitive damages award, and remand to the district court for a new trial on punitive damages unless Mercado-Berrios consents to a reduction of her award from $1,000,000 to $500,000.

We draw the facts from the trial record, reciting them in the light most favorable to the verdict. Marcano Rivera v. Turabo Medical Ctr. P'ship, 415 F.3d 162, 165 (1st Cir. 2005).

The basic factual outline is not in dispute. Plaintiff Teresita Mercado-Berrios' former employer, the Puerto Rico Tourism Company ("the Tourism Company" or "the Company"), is a public corporation of the Commonwealth of Puerto Rico. P.R. Laws Ann. tit. 23, § 671a. Mercado-Berrios began work as a transitory employee within the Company's Tourism Transportation Division on June 9, 2003. By contract, her term of employment was set to last for six months. Defendant María Cancel-Alegría was the Company's Director of Tourism Transportation at the time.

The Tourism Transportation Division was a new addition to the Tourism Company when Mercado-Berrios began work. In 2002, the Legislative Assembly of Puerto Rico assigned the Company responsibility for "[r]egulating, investigating, overseeing, intervening and imposing sanctions to those juridical persons or entities engaged in rendering tourist ground transportation services in the Commonwealth of Puerto Rico." P.R. Laws Ann. tit. 23, § 671e(12). The Tourism Transportation Division was created to perform those new duties. Cancel-Alegría began working in March of 2003 as the only employee within the new division. Because she had only three months to bring the new division to full operational

capacity, she initially hired many employees on a transitory basis. She explained that transitory appointments have "a birth date and an ending" and are exempt from the ordinary public notice and competitive entrance requirements for civil service positions.

Mercado-Berrios was one such transitory employee. She left her former job to work for six months as a Tourism Transportation Officer within the Overseeing Division of the Tourism Transportation Division.[1] She claims that she was promised that she would be hired on a permanent basis at the end of her transitory appointment. The Tourism Transportation Officers worked in the operational arm of the Tourism Transportation Division, which was known as the Overseeing Division. Their duty stations were primarily at ports and airports. Mercado-Berrios worked at Luis Muñoz Marín International Airport, where her basic responsibilities were to inspect luxury vehicles and taxis for compliance with Commonwealth safety regulations; to check those vehicles' documentation; to orient tourists regarding ground transportation services; to handle transportation-related complaints; and to submit daily reports on the work she performed. Several layers of management separated Mercado-Berrios from Cancel-Alegía, and the two women had little contact with one another.

---

[1] Mercado-Berrios ended up serving for seven months. In December of 2003, the Executive Director of the Tourism Company extended the transitory appointments for one month because permanent employees had not yet been hired.

-4-

Cancel-Alegría described the Overseeing Division as "the most delicate area" under her supervision because of the constant interaction between her employees and the tourists, drivers, and airport personnel.

By all accounts, Mercado-Berrios was a conscientious employee who vigorously enforced the safety regulations within her purview. Her supervisors' reviews were consistently glowing. The luxury vehicle and taxi drivers received her efforts with less enthusiasm, however. On several occasions, drivers became angry with Mercado-Berrios for performing inspections in what they perceived to be an overly aggressive manner. The luxury vehicle drivers, in particular, were not accustomed to close scrutiny, and they pressured the Tourism Company to rein in Mercado-Berrios and the other Tourism Transportation Officers.

In December of 2003, two supervisors instructed the Tourism Transportation Officers to "hold your horses" and stop issuing citations to luxury vehicles that were not in compliance with the safety regulations. The officers understood the instruction to have come from Cancel-Alegría. Mercado-Berrios complained to William Ríos-Vázquez, a shift supervisor, that she was "uncomfortable" with the new policy because she thought it reflected "a lack of respect" for the work she and her co-workers were performing, and because the lax enforcement would put "the tourist, who is the person that is paying for service, his life was

at risk." She made similar complaints to two other employees: Cesar Ramos, a shift supervisor, and Julia Palacios, an attorney.

Around the same time, Mercado-Berrios and a number of her transitory co-workers applied for permanent positions as Tourism Transportation Officers. There was testimony that all the transitory employees expected to be appointed to permanent positions as long as their performance was satisfactory. However, on January 16, 2004, one day after the transitory appointments expired, Mercado-Berrios was told that she would not be appointed to a permanent position and should turn in her identification to the Human Resources Office. Cancel-Alegría later testified that she decided not to recommend Mercado-Berrios for a permanent position because

> there were so many complaints that had been received in the way that she performed the interventions, that we really couldn't afford the luxury of -- well, the clientele that we deal with in transportation, I always say that it is like a minefield. Well, in this case that would happen could certainly, as we Puerto Ricans say, could set off the beehive. So I didn't need personnel that would add more of a situation -- I didn't need more personnel to add more situations to the ones that they already had.

The following year, Mercado-Berrios commenced an action in the District of Puerto Rico under 42 U.S.C. § 1983, naming Cancel-Alegría and others as defendants.[2] Mercado-Berrios alleged

---

[2]    The district court entered judgment as a matter of law for the other defendants. That ruling is not challenged in the

that Cancel-Alegría chose not to appoint her to a permanent position because of her political views and in retaliation for complaining about the "hold your horses" instruction, all in violation of the First Amendment. After a six-day trial, the jury returned a verdict for Mercado-Berrios on both claims. The jury awarded Mercado-Berrios $113,000 for lost income and benefits,[3] $100,000 for pain and suffering, and $1,000,000 in punitive damages. The district court denied Cancel-Alegría's motions for judgment as a matter of law and her motion for a new trial and/or remittitur. This appeal followed.

## II.

We review the district court's denial of a motion for judgment as a matter of law de novo. Mass. Eye and Ear Infirmary v. QLT Phototherapeutics, Inc., 552 F.3d 47, 57 (1st Cir. 2009). A Rule 50 motion is properly granted when "'the facts and inferences viewed in the light most favorable to the verdict point so strongly and overwhelmingly in favor of the movant that a reasonable jury could not have returned the verdict.'" Id. (quoting Borges Colón v. Román-Abreu, 438 F.3d 1, 14 (1st Cir. 2006)).

---

present appeal.

[3] This portion of the award constitutes legal damages rather than an equitable award of backpay and frontpay. See Negrón-Almeda v. Santiago, 528 F.3d 15, 26-27 (1st Cir. 2008).

As framed in the district court's instructions and the verdict form, the question before the jury was whether Cancel-Alegría's decision not to hire Mercado-Berrios to a permanent position was motivated by impermissible considerations. The jury found that two such considerations entered into the hiring decision. First, it found that Cancel-Alegría discriminated against Mercado-Berrios based on Mercado-Berrios' "political beliefs or ideas." Second, it found that Cancel-Alegría retaliated against Mercado-Berrios because of Mercado-Berrios' "speech activity."

Each of these findings implicates a distinct line of First Amendment cases. Under the first line of cases, government officials are forbidden from taking adverse action against public employees on the basis of political affiliation or belief, unless political loyalty is an appropriate requirement of the position in question. See Welch v. Ciampa, 542 F.3d 927, 938-39 (1st Cir. 2008). The second line of cases "call[s] for a different, though related, inquiry" when a public employee's speech, rather than her political affiliation or belief, is at issue. O'Hare Truck Serv., Inc. v. City of Northlake, 518 U.S. 712, 719 (1996). The basic rule in such cases is that government officials may not take adverse action against a public employee for speaking "as a citizen on a matter of public concern" unless there is "an adequate justification for treating the employee differently from any other

-8-

member of the general public." <u>Curran</u> v. <u>Cousins</u>, 509 F.3d 36, 45 (1st Cir. 2007) (quoting <u>Garcetti</u> v. <u>Ceballos</u>, 547 U.S. 410, 418 (2006)).

## A. Political Discrimination

The essence of Mercado-Berrios' political discrimination claim is that she was not hired for a permanent position because she was an insufficiently zealous supporter of the Popular Democratic Party ("PDP"), as evidenced by her refusal to buy or sell PDP event tickets and her failure to secure an endorsement from a PDP politician.[4] The jury agreed, finding that her "political beliefs or ideas were a substantial or motivating factor" in Cancel-Alegría's hiring decision. Cancel-Alegría attacks that finding on appeal, arguing that the evidence does not support the jury's conclusion. Having carefully reviewed the trial record, we agree with Cancel-Alegría.

Several former employees testified that the Tourism Transportation Division was highly politicized, especially during the period between October 2003 and the general election in November 2004. Nearly every employee within the Tourism Transportation Division, including Mercado-Berrios and Cancel-Alegría, was affiliated with the PDP. According to William Ríos-

---

[4]   Neither party disputes that Cancel-Alegría's decision not to hire Mercado-Berrios to a permanent position constitutes an adverse employment action for purposes of the First Amendment claims at issue here. <u>See</u> <u>Morales-Tañon</u> v. <u>P.R. Elec. Power Auth.</u>, 524 F.3d 15, 19 (1st Cir. 2008).

Vázquez, a shift supervisor, it was widely acknowledged that "political backing" from a PDP member of the Legislative Assembly was an "important" factor in Tourism Transportation Division appointments. Additional testimony revealed that certain employees within the Tourism Transportation Division pressured their co-workers to participate in, or purchase tickets to, PDP events.

Although there was no evidence that Cancel-Alegría personally pressured her employees, there was testimony that much of the political activity took place in close physical proximity to Cancel-Alegría's office, that Cancel-Alegría spoke "about political activities and fund raising activities" on at least one work-related occasion, and that some of the political activity within the Tourism Transportation Division benefitted Cancel-Alegría's brother, a local senator. The jury could reasonably have inferred from this evidence that Cancel-Alegría was aware of, tacitly approved of, and perhaps even encouraged the partisan political activity within her department.

Nevertheless, "a politically charged atmosphere . . ., without more, provide[s] no basis for a reasonable inference that defendant['s] employment decisions about plaintiff were tainted by [her] disregard of plaintiff's first amendment rights." LaRou v. Ridlon, 98 F.3d 659, 661-62 (1st Cir. 1996) (quoting Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 58 (1st Cir. 1990)). Even when it is clear that the defendant has a political

agenda or harbors political biases, it remains the plaintiff's burden to produce evidence of a causal connection between those biases and the challenged employment action. Such evidence can be direct or circumstantial, and it can come in a wide variety of forms. Cf. Mesnick v. Gen. Elec. Co., 950 F.2d 816, 828 (1st Cir. 1991) (noting in age discrimination and retaliation case that sources of circumstantial evidence of retaliation "include, but are not limited to, evidence of differential treatment in the workplace, statistical evidence showing disparate treatment, temporal proximity of an employee's protected activity to an employer's adverse action, and comments by the employer which intimate a retaliatory mindset") (internal citations omitted). Whatever form the evidence takes, however, it must be sufficiently probative to support a finding that the plaintiff's "protected activity or status was a 'substantial or motivating factor' in the [employment] decision, that is, that the protected activity or status was an impetus for, or moved the employer towards, the [employment] decision." Costa-Urena v. Segarra, 590 F.3d 18, 25 (1st Cir. 2009).

Mercado-Berrios failed to adduce sufficient evidence of this sort. Most importantly, there was no evidence that Cancel-Alegría was aware of Mercado-Berrios's refusal to buy and sell raffle tickets and to attend PDP events. The two women rarely encountered one another, and they never had any private

conversations, let alone politically-oriented discussions or interactions. In addition, nothing suggests that Mercado-Berrios's political beliefs were so widely known that she would have been a "conspicuous target[]" for discriminatory action. Acevedo-Díaz v. Aponte, 1 F.3d 62, 69 (1st Cir. 1993). In the absence of proof that Cancel-Alegría knew of Mercado-Berrios's unwillingness to participate in PDP political activity, it is difficult to see how that unwillingness could have been a substantial or motivating factor in Cancel-Alegría's hiring decision. See Carrasquillo v. Puerto Rico ex rel. Justice Dep't, 494 F.3d 1, 5 (1st Cir. 2007) ("[I]f Jiménez did not know Carrasquillo's political views, they could not have been a substantial factor motivating any adverse employment action.").

The numerical evidence does not buttress Mercado-Berrios's position. Of the twenty-two transitory employees who applied for permanent positions, twelve were not hired.[5] Yet Mercado-Berrios never attempted to show that those who were hired were more politically active than those who were not hired. Cf. Rodríguez-Ríos v. Cordero, 138 F.3d 22, 24 (1st Cir. 1998) (plaintiff presented evidence that a reorganization resulted in "seven PDP-member demotions, with no evidence that any NPP member was either demoted or discharged"). Although comparative evidence

---

[5] In total, two hundred fifty people applied for twenty permanent positions.

is not necessary, it can be helpful in a case like this where there is little else to suggest that the plaintiff was, or was likely to be, targeted for her political views.

Mercado-Berrios contends that Cancel-Alegría's stated reason for not hiring her -- that she was too aggressive with the taxi and limousine drivers -- was pretextual. There is no evidence of pretext, however. By all accounts, Mercado-Berrios was not hired because her conscientious job performance upset the limousine drivers, who were not accustomed to close scrutiny. In this regard, she is partly a victim of her own success on the speech retaliation claim. She presented strong evidence that Cancel-Alegría chose not to hire her because she enforced the safety regulations too vigorously and because she complained about the efforts to rein her in. The strength of that evidence highlights the absence of any evidence that her political orientation was an additional factor motivating Cancel-Alegría's hiring decision.

The most favorable testimony from Mercado-Berrios's perspective came from Eileen Ramos, the head of Human Resources at the Tourism Company, who flatly stated that Cancel-Alegría took political considerations into account in her hiring decisions:

> Q:     Now, there has been testimony here
>        today that Ms. Cancel did not at any
>        time take political considerations to
>        make a recommendation for a position.
>        What do you have to say about that?
>
> COURT: In  relation  to  a  career  position,
>        correct?

Q:      In relation to the career positions at
        the Tourism Transportation Division for
        the tourism transportation officer
        position.

A:      I would say that's not true.

Q:      Why?

A:      Well, because the career positions that
        were posted for tourist transportation
        officer and other positions in that
        office, well, the human resources
        office didn't have any participation in
        the selection of those candidates.

        Well, in the hiring, meaning in the job
        announcement, et cetera, yes, we did
        have participation.  But in the
        selection process, that was done in the
        Division of Tourist Transportation
        office, in that department.  They made
        a panel, interviewing panel to
        interview the people, but we didn't
        have any participation in the
        selection.

        Although this evidence gives us pause, we conclude that
it falls short of providing a sufficient evidentiary basis for a
jury finding in Mercado-Berrios's favor.  Ramos concluded that
politics must have been taken into account because the Human
Resources department had been improperly excluded from the hiring
process.  But that impression was conclusory and speculative.  By
her own admission, Ramos had no personal knowledge of the decision-
making process.  Thus, her opinion is too thin a reed on which to
rest the entire jury verdict.  Without more, we cannot say that it
was reasonable for the jury to conclude that Mercado-Berrios's
political beliefs were a substantial or motivating factor in

-14-

Cancel-Alegría's decision not to hire her.[6]  We therefore reverse the judgment as to Mercado-Berrios's political discrimination claim.

## B.  Retaliation for Speech

In addition to political discrimination, the jury found that Cancel-Alegría refused to hire Mercado-Berrios because she had vocally resisted efforts to stop the safety inspections of luxury vehicles.  "Official reprisal for protected speech offends the Constitution [because] it threatens to inhibit exercise of the protected right, and the law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out." Hartman v. Moore, 547 U.S. 250, 256 (2006) (internal quotation marks and citations omitted).  The general rule holds true in the public employment context: the government is largely forbidden from taking adverse action against its employees in retaliation for

---

[6]     In resisting this conclusion, Mercado-Berrios relies heavily on Gutiérrez-Rodríguez v. Cartagena, a due process police brutality case in which we discussed the standard of causation under section 1983.  See 882 F.2d 553, 561 (1st Cir. 1989) (holding that police officers could be held liable for unconstitutional shooting because they "directed and participated in the acts that led to the shooting").  That case is not illuminating here.  There is substantial evidence that Cancel-Alegría exercised direct control over the hiring decisions for the Tourism Transportation Division.  If there were proof that the decision not to hire Mercado-Berrios to a permanent position was motivated by her political affiliation, Cancel-Alegría could be held liable for having directly "subject[ed]" Mercado-Berrios to a deprivation of constitutional rights.  42 U.S.C. § 1983.

their protected speech.  See Rankin v. McPherson, 483 U.S. 378, 383-84 (1987).

However, in recognition of the government's interest in running an effective workplace, the protection that public employees enjoy against speech-based reprisals is qualified. Retaliatory employment actions do not violate the First Amendment if: (1) the speech in question was "made pursuant to the employee's official duties," Garcetti v. Ceballos, 547 U.S. 410, 413 (2006); or (2) the speech did not touch on a "matter of public concern," Connick v. Myers, 461 U.S. 138, 146 (1983); or (3) the interest of the government as an employer in "promoting the efficiency of the public services it performs" outweighs the interest of the employee in "commenting upon matters of public concern," Pickering v. Board of Education, 391 U.S. 563, 568 (1968).  Cancel-Alegría invokes on appeal the first of these exceptions, relating to speech made pursuant to the employee's official duties.[7]

In Garcetti v. Ceballos, the Supreme Court held that "the First Amendment does not prohibit managerial discipline based on an employee's expressions made pursuant to official responsibilities."

---

[7]     Cancel-Alegría makes several remarks in her brief that could be taken as allusions to other exceptions.  For example, she says that any restriction on Mercado-Berrios' speech was justified because the Tourism Company's "interest was to intervene with firm hands, but courteous and that the user be the priority."  That may be a reference to the Pickering balancing test.  The argument is not developed, however, and we therefore deem it waived.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

-16-

547 U.S. at 424. The relevant inquiry under Garcetti thus has two basic components -- (1) what are the employee's official responsibilities? and (2) was the speech at issue made pursuant to those responsibilities? -- both of which are highly context-sensitive. See Foley v. Town of Randolph, 598 F.3d 1, 7, 9 (1st Cir. 2010) (emphasizing that the context of the plaintiff's speech was "critical to [the] analysis" and that the holding was "limited to the particular facts of this case"). Moreover, in identifying the employee's job responsibilities, the proper inquiry is "practical" rather than formal, focusing on "the duties an employee actually is expected to perform."[8] Garcetti, 547 U.S. at 424-25.

Cancel-Alegría focuses her argument on the daily incident reports in which Mercado-Berrios recorded her interventions with taxis and luxury vehicles. She contends that those reports are not protected by the First Amendment because Mercado-Berrios created and submitted them pursuant to her duties as a Tourism Transportation Officer. That is undoubtedly correct, as Mercado-Berrios herself acknowledged at trial. But as Mercado-Berrios has repeatedly made clear -- in her testimony, in her opening statement

---

[8]    As we recently emphasized, this does not mean that the employer must have expressly required the employee to speak. See Foley, 598 F.3d at 6; see also Weintraub v. Bd. of Educ., 593 F.3d 196, 203 (2d Cir. 2010). Many employees enjoy significant discretion in determining what actions ought to be taken "pursuant to" their job responsibilities. The voluntary or discretionary aspect of their actions does not exempt them from employer control. See Foley, 598 F.3d at 7.

and closing argument at trial, in her opposition to the Rule 50(b) motion, and in her brief on appeal -- the incident reports are not the basis for her retaliation claim. Rather, her claim is that Cancel-Alegría retaliated against her for <u>complaining</u> about her superiors' interference with the performance of her job duties. The relevant question is whether those complaints were made pursuant to her official responsibilities.

That is not an easy question to answer. On the one hand, Mercado-Berrios's complaints were not made "pursuant to" her job duties in the most literal sense. Her responsibilities as a Tourism Transportation Officer were limited to inspecting vehicles, conducting safety interventions, reporting regulatory violations and interventions, and assisting passengers. The record contains no hint that her superiors at the Tourism Company expected her to raise broad policy and safety concerns in carrying out her official duties. Indeed, Cancel-Alegría expressed frustration at Mercado-Berrios' tendency to venture beyond her narrow responsibilities.

<u>Garcetti</u> can be read to suggest that unofficial communications that are not "part of what [the plaintiff] . . . was employed to do," like Mercado-Berrios's complaints, fall outside the scope of its rule. 547 U.S. at 421. The Supreme Court was deliberate in its choice of words. It referred thirteen times to speech made "pursuant to" an employee's job duties, most notably in its statements of the question presented and the holding. <u>Id.</u> at

413, 421. Elsewhere, it described the relevant class of speech in similar terms.[9] The Court did not expressly indicate that it meant to sweep more broadly and include, for example, all speech that relates to, contributes to, or incidentally facilitates the performance of official functions.

On the other hand, some of the considerations identified in Garcetti, such as the importance of "affording government employers sufficient discretion to manage their operations," id. at 422, may suggest a wider scope. Several courts of appeals, focusing on those cues, have construed the decision to cover all speech made "during the course of performing an official duty" that "reasonably contributes to or facilitates the employee's performance of [an] official duty." Brammer-Hoelter v. Twin Peaks Charter Acad., 492 F.3d 1192, 1203 (10th Cir. 2007); see also Williams v. Dallas Indep. Sch. Dist., 480 F.3d 689, 693 (5th Cir. 2007) (per curiam) ("Activities undertaken in the course of performing one's job are activities pursuant to official duties."). On that view, complaints like Mercado-Berrios's might be unprotected, since they could be said to facilitate job performance by removing (or attempting to remove) an obstacle. The D.C.

---

[9] For example, the Court referred to speech that "owes its existence to a public employee's professional responsibilities," 547 U.S. at 421; speech that the employer "has commissioned or created," id. at 422; speech that the employee "was paid to" make, id.; speech that the employee's "duties . . . required him to" make, id.; speech that amounts to the employee's "work product," id.; and speech that is an "official communication[]," id. at 423.

-19-

Circuit has explicitly embraced such a view. See Winder v. Erste, 566 F.3d 209, 215 (D.C. Cir. 2009) ("[W]e have consistently held that a public employee speaks without First Amendment protection when he reports conduct that interferes with his job responsibilities, even if the report is made outside his chain of command.").

In short, there are strong arguments that the "pursuant to official duties" doctrine of Garcetti does not apply to Mercado-Berrios's complaints to her superiors, but there are also strong arguments to the contrary. Cancel-Alegría has addressed none of this complexity, focusing only on the daily incident reports filed by Mercado-Berrios despite ample notice of the basis for Mercado-Berrios's speech retaliation claim. Even after Mercado-Berrios again clarified her position in her brief to this court, Cancel-Alegría declined to file a reply brief. We will not do a party's work for her. Consequently, we will not address arguments on appeal that Cancel-Alegría might have made, but did not make, about the application of Garcetti to Mercado-Berrios's complaints.[10] See Rivera-Gomez v. de Castro, 843 F.2d 631, 635 (1st Cir. 1988) ("[A] litigant has an obligation to spell out its arguments squarely and distinctly or else forever hold its peace.") (internal quotation marks and citation omitted). Because Cancel-Alegría has not

---

[10] We also will not address Cancel-Alegría's qualified immunity argument, which simply refers back to her misguided merits argument.

-20-

contested the sufficiency of the evidence, or made any other argument attacking the speech retaliation claim, the judgment is affirmed as to that claim.

### III.

Cancel-Alegría's final argument is that the damages award is excessive and should have been reduced by the district court.[11] "[T]he measure of damages in section 1983 actions is a matter of federal common law." Figueroa-Rodriguez v. Aquino, 863 F.2d 1037, 1045 (1st Cir. 1988) (citing Carey v. Piphus, 435 U.S. 247, 257-59 (1978), and Sullivan v. Little Hunting Park, Inc., 396 U.S. 229, 238-40 (1969)). Although punitive damages awards are subject to constitutional limits as well, see, e.g., State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408 (2003), Cancel-Alegría has not argued that the award in this case exceeds those limits. We therefore limit our review to whether the award is excessive as a matter of federal common law. See Hardeman v. City of Albuquerque, 377 F.3d 1106, 1122 (10th Cir. 2004) (applying common law standard because constitutional argument had been forfeited). Under the traditional common law standard, a district court will not disturb the jury's compensatory or punitive damages award unless the award is "'grossly excessive,' 'inordinate,' 'shocking to the conscience

---

[11] She also argues that the district court should have granted a new trial because the verdict was against the weight of the evidence. The district court did not abuse its discretion in denying that request.

-21-

of the court,' or 'so high that it would be a denial of justice to permit it to stand.'"[12] Wagenmann v. Adams, 829 F.2d 196, 215, 216 (1st Cir. 1987) (quoting Segal v. Gilbert Color Sys., Inc., 746 F.2d 78, 80-81 (1st Cir. 1984)); see also 1 Sheldon H. Nahmod, Civil Rights & Civil Liberties Litigation §§ 4:12, 4:45 (4th ed. 2009). We, in turn, review the district court's denial of remittitur for abuse of discretion. See McDonough v. City of Quincy, 452 F.3d 8, 22 (1st Cir. 2006) (citing Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 433 (1996)).

## A. Compensatory Damages

The jury awarded Mercado-Berrios $113,000 for "loss of earnings, salaries, and benefits" and $100,000 for "emotional pain and suffering." With respect to the lost earnings, the following facts were either stipulated to or supported by the evidence at trial: Mercado-Berrios earned $2,400 per month as a Tourism Transportation Officer; she left the Tourism Company in January of 2004; she earned approximately $900 per month in a secretarial position from March of 2004 until October of 2004; she earned less than $10,000 in 2005; she earned no income in 2006; and she paid approximately $1,000 per year in medical expenses that would

---

[12] Because Cancel-Alegría has not raised the issue, we do not consider what effect, if any, the Supreme Court's decision in Exxon Shipping Co. v. Baker, 128 S. Ct. 2605 (2008), has had on our section 1983 damages jurisprudence. Cf. Mendez v. County of San Bernardino, 540 F.3d 1109, 1122 (9th Cir. 2008); Kunz v. DeFelice, 538 F.3d 667, 678 (7th Cir. 2008).

otherwise have been covered by her government benefits plan. She also testified that, as of the trial date in 2007, she remained unable to find steady work. On those facts alone, Mercado-Berrios lost approximately $71,000 in income and benefits in the three years after her departure from the Tourism Company.

Cancel-Alegría presented no evidence to suggest that these figures are inflated or that Mercado-Berrios unreasonably failed to mitigate her damages. Even factoring in taxes, accounting for the likelihood that Mercado-Berrios would eventually find steady employment, and discounting the estimated stream of future income to its present value, cf. Jones & Laughlin Steel Corp. v. Pfeifer, 462 U.S. 523 (1983), we conclude that the jury's award for lost earnings was reasonable. See Segal, 746 F.2d at 81 ("Even in cases . . . which involve only economic loss, review must proceed with great deference for the jury's assessment: 'the jury is free to select the highest figures for which there is adequate evidentiary support.'" (quoting Kolb v. Goldring, Inc., 694 F.2d 869, 872 (1st Cir. 1982))).

The award for pain and suffering is likewise reasonable. We have recognized that "converting feelings such as pain, suffering, and mental anguish into dollars is not an exact science. The jury is free 'to harmonize the verdict at the highest or lowest points for which there is a sound evidentiary predicate, or anywhere in between . . . so long as the end result does

-23-

not . . . strike such a dissonant chord that justice would be denied were the judgment permitted to stand.'" Correa v. Hosp. San Francisco, 69 F.3d 1184, 1198 (1st Cir. 1995) (quoting Milone v. Moceri Family, Inc., 847 F.2d 35, 37 (1st Cir. 1988)). Mercado-Berrios testified at length about the mental and emotional distress she suffered as a consequence of her departure from the Tourism Company. For example, she told the jury that she suffered from so much stress that she was unable to sleep, that her relationships with friends and extended family suffered, and that she eventually had to seek the help of a psychologist. In light of the evidence, we do not find the jury's award "to cross the outer limit of the wide universe of acceptable awards." Id.

## B. Punitive Damages

Because Cancel-Alegría did not challenge the availability of punitive damages below, our review of the award is for excessiveness only. Also, as noted earlier, we will conduct our review under the traditional common law excessiveness standard rather than the Due Process excessiveness standard. The standard is the same as for compensatory damages: the award should not be disturbed unless it is "'grossly excessive,' 'inordinate,' 'shocking to the conscience of the court,' or 'so high that it would be a denial of justice to permit it to stand.'" Wagenmann, 829 F.2d at 215, 216; Hardeman, 377 F.3d at 1122. "[T]he amount of such an award is, in the first instance, committed to the

-24-

discretion of the nisi prius court," Wagenmann, 829 F.2d at 216, and we review the district court's excessiveness determination for abuse of discretion only.  See Cooper Indus., Inc. v. Leatherman Tool Group, Inc., 532 U.S. 424, 433 (2001) ("If no constitutional issue is raised, the role of the appellate court, at least in the federal system, is merely to review the trial court's determination under an abuse-of-discretion standard.") (internal quotation marks and citation omitted).

The $1,000,000 award was likely intended to punish Cancel-Alegría both for considering Mercado-Berrios's political affiliation and for considering Mercado-Berrios's protected speech in the refusal to hire her for a permanent position.  The alleged political discrimination cannot form the basis for a punitive damages award, however, because it was unsupported by the evidence. The question is thus whether an award of $1,000,000 for speech retaliation is excessive under the circumstances of this case.  We conclude that it is.

The conduct in question was undoubtedly reprehensible. Mercado-Berrios testified at trial that there were "taxi drivers and chauffeurs who [were] not complying with the rules and the traffic laws, putting at risk the lives of human beings."  In lashing out at an employee for bringing those safety concerns to light, Cancel-Alegría chilled the free flow of information relating to passenger safety and thereby increased the risk that innocent

-25-

passengers would be harmed.  Cf. Philip Morris USA v. Williams, 549 U.S. 346, 355 (2007) (noting that risk of harm to the public may be taken into account in measuring reprehensibility).

At the same time, the retaliation against Mercado-Berrios appears to have been an isolated incident.  No other speech-based employment actions were taken against Mercado-Berrios, and there is no evidence that Cancel-Alegría acted similarly against other employees.  It is also clear that the award in this case is large for a First Amendment claim in the public employment context.  Cf., e.g., Rodríquez-Marín v. Rivera-González, 438 F.3d 72, 84 (1st Cir. 2006) ($195,000 in punitive damages); Rivera-Torres v. Ortiz Velez, 341 F.3d 86, 102 (1st Cir. 2003) ($250,000 in punitive damages).

Unfortunately, few recent cases provide direct guidance on this issue.  Courts rarely apply the common law excessiveness standard to punitive damages awards these days, since aggrieved defendants now commonly invoke the arguably stricter due process standard.  The Tenth Circuit's decision in Hardeman v. City of Albuquerque is perhaps most on point.  The jury in that case found that the defendant mayor denied the plaintiff a contractual severance package worth approximately $40,000 because of the plaintiff's association with African-American groups.  377 F.3d at 1112.  The jury awarded $1,000,000 in punitive damages on the claim, which the district judge reduced to $625,000.  Id.  The

Tenth Circuit affirmed under the common law standard.  Id. at 1122-23.

We think a similar approach is appropriate here.  An award of $1,000,000 against an individual-capacity defendant based on the conduct proved at trial is "grossly excessive" and "shocking to the conscience of the court."  Wagenmann, 829 F.2d at 215.  In our judgment, $500,000 is the maximum award that can be justified on the facts of this case.  We therefore vacate the award and remand to the district court for a new trial on punitive damages unless Mercado-Berrios consents to a reduction of her award from $1,000,000 to $500,000.

## IV.

For the foregoing reasons, the judgment is **AFFIRMED** as to the speech retaliation claim and compensatory damages, **REVERSED** as to the political discrimination claim, and **VACATED** as to punitive damages.  The case is **REMANDED** to the district court for a new trial on punitive damages unless Mercado-Berrios consents in the district court to a reduction of her award from $1,000,000 to $500,000.  Each party shall be responsible for its own costs.